# Oakley *v.* The State.

*Indictment for Rape.*

1. *Organization of special grand jury; when properly organized by Walker County Law and Equity Court.*—Under the provisions of the act establishing the Walker County Law and Equity Court, approved December 5, 1900, (Acts of 1900-1901, p. 107), that said court "shall have and exercise all the jurisdiction and powers which are now or may hereafter be by law conferred upon the several circuit, chancery and county courts of the State," and that "the judge of said court may, at his discretion, order a grand jury to be drawn, summoned and empannelled for said court and county of Walker, whether or not the grand jury shall have already been had for said term of said court," in an order of said court for a special grand jury, it is not necessary that the investigation to be had should be restricted to any particular offense, or that the offense to be investigated should be particularly described, or that the name of the person or persons as being charged with the offense should be specified.

·[Oakley ʼv. The State.]        .    .

2.  *Pleading and practice; when motion · to quash or demurrers
    come too late.*—In the trial of.a criminal case,. after a plea to
    the merits has been filed, a motion to quash the indictment
    or a demurrer to the indictment comes too late.

3.  *Same; when refusal of court to allow withdrawal of the plea to
    the merits not revisable.*—Whether the defendant in a crimin-
    al case shall be permitted. to withdraw his plea of not guilty
    and file a motion to quash the indictment or interpose a de-
    murrer to the indictment is a matter addressed to the dis-
    cretion of the trial   court and is not revisable on appeal.

4.  *Rape; sufficiency of indictment.*—An indictment which charges
    that the defendant "did carnally know or abuse in the at-
    tempt to carnally know Mattie Oakley, a female under the
    age of fourteen years, against the peace and dignity of the
    State of Alabama," is bad, and subject to demurrer, because
    it does not aver whether the. person assaulted was over or
    under ten years of age, and, therefore, fails to show whether
    the defendant was charged with a felony, (Code, ʼ§ 5447), or a
    misdemeanor, (Code, § 5448).

5.  *Rape; admissibility of evidence.*—On a trial under an indict-
    ment for rape, it is competent for the State, after the woman
    assaulted has testified to the commission of the offense, to
    prove in corroboration of her testimony as to the main fact,
    that recently after the outrage she made complaint to those
    to whom complaint of such an occurrence would naturally be
    made, but on direct examination such testimony is confined
    to the bare fact of complaint, and details of the occurrence,
    including the identity of the person accused, are not proper
    subjects of inquiry, and can not be proved.

6.  *Same; same.*—On a trial under an indictment for rape, it is
    competent for the State to prove as a part of the *res gestae*,
    that when the girl alleged to have been ravished was being
    assaulted she cried and called to her mother, and that the
    latter went to her and was struck by the defendant; but fur-
    ther evidence that the mother of the girl was badly hurt by
    the blow thus inflicted by the defendant and was thereby dis-
    abled, is irrelevant and inadmissible.

7.  *Same; same.*—On a trial under an indictment for rape, it is
    competent for the state to prove that the defendant lived as
    one of the family of which the girl assaulted was a member,
    and that he was considered and claimed to be a half brother
    of the girl he assaulted.

8.  *Same; same.*—On a trial under an indictment for rape, letters
    written by the defendant, after being placed in jail upon said
    charge, to the person assaulted and her mother, in which he
    refers to the commission of the offense charged by him, are
    admissible in evidence.

[Oakley v. The State.]

9. *Trial and its incidents; how motion should be shown on appeal.*
On a trial under an indictment for rape, a motion made by
the defendant for the appointment of physicians to make
physical examination of the person assaulted, in order to be
reviewed on appeal, should be shown by the bill of exceptions;
and if such motion appears only as a part of the record of the
case, it will not be reviewed.

APPEAL from the Walker Law and Equity Court.
Tried before the Hon. W. B. APPLING.

The appellant in this case, Oscar Oakley, was tried
under the following indictment: "The grand jury of
said county charge that before the finding of this in-
dictment Oscar Oakley alias Oscar Berry forcibly rav-
ished Mattie Oakley, a female.

"The grand jury of said county further charge that
before the finding of this indictment Oscar Oakley, alias
Oscar Berry, did carnally know, or abuse in the attempt
to carnally know Mattie Oakley, a female, under the
age of fourteen years, against the peace and dignity of
the State of Alabama." This indictment was preferred
by a special grand jury, which was summoned and
drawn in obedience to an order made by the judge of
the Walker County Law and Equity court on Febru-
ary 8, 1901. This order was in words and figures as fol-
lows: "It being made to appear to the court that since
the last grand jury of this county has been discharged,
and this court now being in session, certain indictable
offenses have been committed during the session of this
court by certain persons who have been arrested and are
now confined in the county jail of Walker county, Ala-
bama, by the sheriff of said county under proper com-
plaints made; and it being made known to the court that
one of said offenses is punishable capitally being the of-
fense of rape and the other being the offense of arson in
the 2d degree, and the court being of the opinion that the
public good required that a grand jury for said county
should be immediately drawn and empanelled as re-
quired by law to investigate said offenses; it is there-
fore ordered by the court that the sheriff of Walker
county, Alabama, forthwith summons 18 persons pos-
sessing the requisite qualifications of grand jurors to
appear at the court house of said county on Monday,

2c

[Oakley v. The State.]

the 11th day of February, 1901, to serve as grand jurors for the purpose of investigating said offenses, and the sheriff of said county is hereby commanded to forthwith execute this order. It is further ordered that this order be entered upon the minutes of this court."

The indictment was returned into court on February 12, 1901. On that day, February 12, 1901, the defendant was arraigned under the charge preferred in said indictment and pleaded not guilty, and the cause was set down for trial on February 19, 1901, and the court made an order directing that a special venire consisting of 40 duly qualified jurors be regularly drawn, summoned and empannelled for the trial of the cause, and also ordered the sheriff to serve a copy of the indictment, together with a list of the special jurors so drawn, and a list of the jurors drawn and summoned for the week of the term of the court during which the case was set for trial, one entire day before the day set for trial. On the day the case was called for trial, the defendant moved the court to quash the indictment upon several grounds, among which were the following: 1. That said persons composing the grand jury which found this indictment were not drawn by any person. 2. Because the grand jury which found this indictment had no authority to investigate the charge for which this defendant is indicted. 3. Because the persons composing said grand jury were selected by the sheriff of this county. 4. Because the grand jury that found this indictment returned indictments for more than one offense. 5. Because the grand jury that found this indictment was organized to investigate more than one offense. The State moved the court to strike from the file the motion to quash the indictment because it was not filed until after the defendant had pleaded to the merits. This motion was granted and to this ruling the defendants duly excepted. The defendant then moved the court to allow him to withdraw his alleged plea of not guilty and refile his motion to quash. The court overruled this motion, and the defendant duly excepted. On the same day, the defendant moved the court to appoint a number of competent physicians to examine the person of Mattie Oakley for the purpose of ascertaining whether or not there

was evidence of the commission or attempted commission of a rape upon her person. The motion was overruled, and the defendand duly excepted. This motion, however, does not appear in the bill of exceptions, but is shown only by the record. When the case was called for trial, the defendant offered to file demurrers to the indictment, which demurrers were as follows: To the indictment as a whole the defendant demurred upon the following grounds: 1. The first count of the indictment charges a felony and the second count charges a misdemeanor. 2. For that the first count charges an offense punishable by death or imprisonment in the penitentiary and the second count charges an offense that is punishable neither by death nor imprisonment in the penitentiary. To the first count of the indictment, the defendant demurred upon the ground that said count does not allege the time of the commission of the alleged offense with sufficient certainty to give the defendant notice of what offense he is charged. To the second count the defendant demurred upon the following grounds: 1. The said count fails to allege whether or not the said Mattie Oakley was under or over the age of ten years at the time of the alleged commission of the said offense. 2. Because the said count fails to allege that the said Mattie Oakley was over the age of ten years at the time of the commission of the alleged offense. 3. Because the said count fails to allege that the said Mattie Oakley is under the age of ten years. The State moved the court to strike from the file the defendant's demurrers, upon the ground that it was filed after the plea to the merits was interposed by the defendant. This motion was sustained, and the defendant duly excepted. The defendant moved the court to be allowed to withdraw his alleged plea of not guilty, and to interpose his demurrers. This motion was overruled, and the defendant duly excepted.

On the trial of the case, the State introduced Mattie Oakley, the person alleged to have been assaulted, who testified to the commission of rape upon her by the defendant. She further testified that she was 12 years of age. There was introduced by the State testimony corroborating the testimony of Mattie Oakley.

[Oakley v. The State.]

One Sam Fowler was introduced as a witness for the defendant, and during his examination he testified that the defendant lived in the house with Mrs. Oakley as one of the family, and he was generally regarded in the community as the half brother of Mattie Oakley. This witness also testified to his having delivered letters from the defendant to Mattie Oakley and her mother, Belle Oakley. It was shown by the evidence for the State that these letters were written by the defendant after he was put in jail under the charge for which he was being tried. In the letter to Mattie Oakley, among other things, he said that if he had mistreated her, he hoped she would forgive him and that he would never do so any more. In the letter to Mrs. Oakley he stated that if he ever got out of this trouble, he would never do so again. Upon the State offering to introduce these letters in evidence, the defendant objected upon the ground that they were irrelevant, illegal and immaterial, and contained a confession, and that there had been no predicate laid for the confession. The court overruled this motion, allowed the letters to be introduced in evidence, and to this ruling the defendant duly excepted.

The jury returned a verdict finding the defendant guilty as charged in the first count of the indictment, and fixing his punishment at fifteen years in the penitentiary. The judgment and sentence of the court were in accordance with such verdict.

LEITH & SHERER, for appellant.

CHAS. G. BROWN, Attorney-General, for the State.

SHARPE, J.—An act approved December 5th, 1900, created the "Walker County Law and Equity Court" and declared it "shall have and exercise all the jurisdiction and powers which are now or may hereafter be by law conferred upon the several circuit, chancery and county courts of the State." It provided that "when exercising the jurisdiction and powers of courts at law said court shall conform to the rules of procedure and practice in the circuit courts of this State," and further "that in the absence of any special jury law for the county of Walker, that the grand and petit juries for said

court shall be drawn and empannelled and sworn in the same manner as is or may be hereafter provided by law in respect to grand and petit juries in the circuit courts of this State." There is another provision "that the judge of said court may, at his discretion, order a grand jury to be drawn, summoned and empannelled for said court and county of Walker, whether or not a grand jury shall have already been had for said term of said court." This latter provision seems a departure from the general system, for, under the latter but one grand jury with general powers could be drawn and organized at a single term of court.—*O'Brien v. State,* 91 Ala. 16; *O'Byrnes v. State,* 51 Ala. 25. However, it is not inconsistent with the exercise by the Walker County Law and Equity Court of the power which under the general system (Code, § 5000) is given the courts to organize a grand jury for the special purpose of acting on any offense whether one or more "committed during the session of the court and after the grand jury had been discharged," without a drawing from the jury box of names of persons to compose such jury and from persons summoned by the sheriff under an order of court. The power to proceed under that section of the Code was among those conferred on the court by the clause first above quoted from the act creating it. A like conclusion involving the power of the city court of Montgomery was reached in *Lide v. State,* decided at last term, 133 Ala. 43. In such case the statute does not require that the court in its order for a grand jury shall particularly describe or restrict the grand jury in describing the offense to be investigated or shall specify the name of a person as being charged with its commission. For the court to do so in advance of the investigation might be impracticable and might tend to defeat the object of the investigation. It is, therefore, immaterial that the order for the grand jury which indicted the defendant does not name him or the offense with which he is charged by the second count of the indictment.

These questions relating to the legality of the grand jury we have thought proper to be passed on here though the motion to quash the indictment was not made until after the defendant had pleaded not guilty and

for that reason was stricken out. By first pleading to the merits of the case the defendant waived his right both to move to quash and to demur to the indictment. 1 Bish. New Crim. Pro., § 730. As supporting this proposition so far as it relates to the motion, see *Davis v. State,* 131 Ala. 10; *Jackson v. State,* 74 Ala. 26; *Nixon v. State,* 68 Ala. 535. Whether to allow the plea withdrawn, or to strike out the motion to quash and the demurrer as was done was within the trial court's discretion.

Since the judgment must be reversed for rulings to be referred to, and that such action may be taken on another trial as may be advised, we call attention to the case of *Hundy v. State,* 121 Ala. 13, as indicating that the second count of the indictment is bad because it does not aver whether Mattie Oakley was over or under ten years of age, and, therefore, fails to show whether the defendant is charged under section 5447 of the Code as for a felony, or under section 5448 of the Code as for a misdemeanor.

On the direct examination of Mrs. Oakley, a witness for the prosecution and the mother of Mattie Oakley, who was the alleged victim of the assault, the solicitor propounded to her this question: "I will ask whether Mattie told you what Oscar had done to her?" Before it was answered the question was changed to the following: "I will ask you without going into details, did she tell you he had raped her?" and against defendant's objection the witness was allowed to answer, "Yes, sir." The objection to this question and the objection to the like inquiry addressed to the witness Mamie Oakley should have been sustained. The State had a right to prove that recently after the assault the girl made complaint of the occurrence to her mother and sister, but in allowing the State by its questions and the witnesses by their answers to individualize the defendant as the person said by the girl to have committed the outrage, the testimony elicited went beyond the permissible scope of showing a bare complaint, and injected into the case unsworn statements of the girl directed to the identifica-

tion of the defendant as the culprit. A similar question was passed on in *Bray v. State*, 131 Ala. 46, where it was stated as a rule applicable in such cases and sustained by the authorities there cited that "the State is not privileged to prove that the woman complained that any particular person assaulted her until after the defendant has brought out particulars of the complaint, or has introduced evidence tending to impeach the witness who testifies to the complaint."

It was proper for the State to prove as of the *res gestae*, that when the girl Mattie was being assaulted she cried and called to Mrs. Oakley, and that the latter went to her and was struck by defendant; but that Mrs. Oakley was by that striking put in "bad condition" and disabled to do cooking was matter irrelevant to the issue. The objections to the questions that brought out these facts, viz.: "What effect did the lick have on you?" and "What disabled you?" ought to have been sustained.

Fowler was properly allowed to testify that defendant lived as one of the Oakley family. The questions asked by the solicitor as to whether defendant did not "hold out and claim Mattie and Mamie Oakley to be his half sisters, and whether defendant was considered as one of the Oakley family" may not have been in proper form; but they were not irrelevant or immaterial and were, therefore, not subject to the grounds of objection urged against them.

There was no error in overruling defendant's objection to the introduction of letters offered by the State, or in not allowing him to testify as to whether there had been improper intercourse between him and Mrs. Oakley, or whether the latter had been drunk.

That which appears in the transcript as a motion by defendant for the appointment of physicians to make physical examination of Mattie Oakley, being out of the bill of exceptions, is not properly authenticated for the purpose of review.

Reversed and remanded.