THOMAS R. SMOTHERS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1   An objection to a question as irrelevant propounded by the State to one of its witnesses asking whether the witness had a conversation with the defendant the day before the killing is futile when the answer of the witness gives the conversation which is apparently relevant.

2.  That a written statement of the facts of the homicide made by the defendant to the coroner's jury is offered and introduced in evidence at the trial of the case affords no ground for reversible error, when the only incriminating fact in the statement is the act of shooting which had been admitted by the defendant to other witnesses and was never denied.

3.  An instruction requested by the defendant is properly refused which assumes that the defendant was assaulted by the deceased with a knife, a fact which was contested by the State.

4.  It was a question for the jury to determine whether a large pocket knife, which was introduced in evidence, was a weapon likely to produce death or great bodily harm.

5.  Where the general charge of the trial judge covered the law of self defense in such form as enabled the jury to apply the law to the facts of the case the refusal of the trial judge to give several other instructions upon self defense is not reversible error.

Writ of error to the Circuit Court for Franklin County.

The facts in the case are stated in the opinion of the court.

*R. Don McLeod, Jr.,* and *McCord & Johnston,* for Plaintiff in Error;

*Park Trammell,* Attorney General, and *C. O. Andrews,* for the State.

Hocker, J.—At the Spring Term of the Circuit Court of Franklin County, Thomas R. Smothers was tried for the murder of James G. McCune, was convicted of Manslaughter and sentenced to the State Prison for ten years.

He seeks to review the judgment on writ of error. The facts as revealed by the record were substantially as follows: On the day before the killing,, Smothers and McCune were in Carrabelle. Mr. Moore, a State's witness testified that he met Smothers who asked him if he had seen Mack (Meaning McCune) and that Smothers said "He has been telling some damn lies on me and my employer." "He told a damn lie on me and I will see the damn son-of-a-bitch. I am going to do him one."

On the next morning (the 24th) Smothers and McCune appear to have gone out together to a place occupied by Smothers about two miles from Carrabelle. A negro woman, who had gone out to Smothers' place to cook dinner for him testified that they were there about the barn when she arrived, or soon after; that they were around and in the house during the morning; that they appeared to be perfectly friendly; that she heard no fussing or quarreling between them; that Smothers had a pistol; that after dinner, it appears that they went to

the stable where the mules were and while they were putting a saddle on McCune's mule, which Smothers says he had loaned him, McCune was shot and killed by Smothers. Smothers, who was the only eye witness says that McCune made a sudden lunge at him with a knife and that he shot McCune twice. He does not say that they had any quarrel or misunderstanding or any sort. He says that McCune appeared to be crazy but no other witness said he was insane. After shooting McCune, Smothers went to the house and the negro woman testifies that he said he had shot McCune. That he urged her to go and look at McCune. That she did so. That Smothers asked her if she saw anything in McCune's hand, and she answered "yes. He was lying on his back with his knife in his hand—one hand out beside him and the other hand sticking straight up with the knife in it." He was dying—gasping. She says that after the shooting, the mule with the saddle on ran out of the stable and that Smothers stayed in there "a right smart while." When he came out he had a pistol in his hand. She says that they were friendly when they went out there, both lying on the same bed, and that Smothers said he shot McCune because McCune tried to cut him.

The foreman of the coroner's jury testified that he examined the body of McCune. It was lying in the Southeast corner of the stable. McCune was lying on his back with his hand by his side and had a knife in his left hand. He was a left handed man. Witness took the knife from his hand. Witness testifies that he touched his hand and the knife fell out: "he had no grip on the knife." McCune was shot through the wrist and body.

A physician testified that it was probable if McCune had a knife in his hand when he was shot through the wrist, it would have fallen out.

The defendant testified that he had no idea why McCune assaulted him with the knife. That they had been perfectly friendly. That he had loaned him the knife before dinner to pick a splinter out of his hand. He denied that the statement of State's witness Moore as to his making a threat against McCune, and gives a circumstantial statement of what transpired at the stable, and that he went to the house for his pistol after going to the stable, telling McCune he might see something to shoot in the woods that evening.

The foregoing is the substance of the evidence. It is evident that the jury were not able to reconcile Smothers' statement of what occurred at the stable with their knowledge of the principles which usually govern human conduct. McCune is not shown to have had the slightest feeling of animosity towards Smothers. The parties were apparently friendly. Not the slightest reason is shown why McCune should suddenly and unexpectedly have assaulted Smothers with a knife, especially since McCune knew that Smothers was armed with a pistol.

Under such circumstances the jury naturally turned for an explanation of this killing to the threat which Mr. Moore testified he made the day before.

The assignments   based on the ground that the evidence is not sufficient to sustain the verdict cannot be sustained.

Mr. R. C. Moore, a State's witness stated that he had a conversation with Smothers at Carrabelle the day before the kiling. He was asked by the State Attorney what that conversation was. This was objected to because it did not appear that the conversation was relevant. The objection was overruled and this is assigned as error. The answer of Moore shows the relevancy of the conver-

sation, and because of this and other reasons, the assignment cannot be sustained.

The fifth assignment of error is based on the introduction in evidence of the written statement of Smothers at the inquest to the jury, and the sixth, on the refusal of the court to strike it.

The only incriminating fact in the statement is the act of the shooting, which had been admitted several times to other previous witnesses and never denied, and these objections are therefore merely academic.

Several assignments of error are based on the refusal of the court to give special instructions amongst others, the court was requested to charge the jury that a knife is a sufficient deadly weapon to justify the assaulted person in killing his assailant when the intention of the assailant is manifest to use such knife to inflict death or great bodily injury. This instruction to be applicable to the case seems to assume as a matter of fact that McCune assaulted Smothers with a knife.

In view of the issues in the case this was improper. Furthermore, it is not essential for a judge to charge the jury that a large pocket knife, such as the one in evidence is a weapon likely to produce death or bodily harm, or that it is a dangerous weapon. This was a question for the jury. Wharton on Homicide (3rd Ed.), 139.

Another special instruction requested the court to instruct the jury that a person assaulted on his own premises is not bound to retreat, but may lawfully resist to the extent of killing his adversary.

This instruction, to be applicable to the case, seems to assume that Smothers was assaulted on his own premises; and besides does not state the law as it is formulated in

the case of Danford v. State, 53 Fla. 4, 43 South. Rep. 593.

Several special instructions were requested upon the law of self defense, which were refused.

Without regard to the correctness of each of these instructions, it seems to us that the general charge of the judge covered the law of self defense quite thoroughly, and in such form as enabled the jury to apply the law to the facts of the case.

We discover no reversible error in this record, and the judgment below is affirmed.

WHITFIELD, C. J., AND TAYLOR, SHACKLEFORD AND COCKRELL, J. J., concur.