ABE WASHINGTON, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed December 8, 1923.

1. In the prosecution of an indictment for murder in the first degree where the court instructs the jury in substance that a majority of the jury, in the event the jury finds the defendant guilty, may recommend the defendant to mercy and

such recommendation will have the effect of reducing the penalty to life imprisonment, it is not error to omit the words "or executive clemency."

2. In the trial of one charged with murder in the first degree where the defense is "lack of premeditated design as a result of intoxication," it is not harmful error for the court to sustain the State's objection to a question propounded to the defendant by his counsel as to whether the defendant drank whiskey for the purpose of strengthening his mind in order to kill the woman.

3. Where the defendant in a prosecution for murder testifies in his own behalf and is asked upon cross examination if he had ever been convicted of crime in the State and answers in the affirmative it is unnecessary to press the inquiry to the point where the particular crime is named where there is no doubt as to the identity of the slayer or motive for the act.

4. Evidence examined and found sufficient to sustain verdict of murder in the first degree.

This case was decided by Division A.

A Writ of Error to the Circuit Court for Duval County; George Couper Gibbs, Judge.

Affirmed.

*S. D. McGill,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and J. B. Gaines, Assistant Attorney General, for the State.

ELLIS, J.—The plaintiff in error, Abe Washington, was convicted of the murder of Laura Simmons, whom he killed upon a street in Jacksonville after chasing her for several hundred feet. Pursuing her for considerable dis-

tance, after she fled from her house where he assaulted her and threatened to kill her, he overtook her and cut her to death with a pocket knife.

The defense interposed seemed to be that the accused was, at the time of the homicide, under the influence of an intoxicating liquor called "shine" of which he had drunk, a half hour before, about a glass half full and during an earlier part of the day had had several more drinks of the same kind.

The evidence, not only that offered by the State, but the entire body of it, shows a premeditated design, a deliberate purpose, cruel, unrelenting, merciless, to kill the woman with whom he was living in an illicit relation because she had hidden from him some of the whiskey of which he seemed to have a supply.

The jury convicted him of murder in the first degree. He seeks a reversal upon the ground that the evidence shows that he was too intoxicated at the time of the homicide to entertain the necessary specific intent to commit murder in the first degree, and for several alleged errors of a more technical character.

A discussion of the evidence is unnecessary. It would be of no service, could prove nothing, establish no principle nor make confirmation of the verdict more complete than the recital of it in the bill of exceptions.

The defendant had been drinking early in the day; but he came to the house in the afternoon, engaged in a game of cards with several other negroes, including the woman whom he killed, treated them to whiskey, of which he seemed to have a supply in the house, some drank, others refused. After a time the game of cards was ended; some of the negroes left the house, one or two others remained. The defendant followed the Simmons woman to a back room in the house, attacked her and threatened to kill her

because he said she had hidden some of his "shine" and he had "promised" to kill her anyway. He was prevented from committing the deed in the house; the Simmons woman ran out upon the street crying for help. The defendant got away from those who tried to detain him and dissuade him from his purpose, and, pursuing the woman upon the streets of the city, overtook her and while she begged for her life, cut her to death in the presence of several persons, who did nothing to prevent the crime.

The court's instruction to the jury on the statutory right to recommend the accused to the mercy of the court was correct. The failure to include the words "or executive clemency" did not vitiate the charge nor deprive the defendant of any right or benefit. A failure to refer to the section at all would not have been error. See Milton v. State, 40 Fla. 251, 24 South. Rep. 60; Webster v. State, 47 Fla. 108, 36 South. Rep. 584.

There is nothing in Newton v. State, 21 Fla. 53, nor Denham v. State, 22 Fla. 664, which announces a contrary view. In the former case the court, after charging the jury upon the subject of recommendation to mercy, sought to explain the reason for such legislation and to control the jury in the free exercise of their judgment. In the second case the court charged the statute and the Supreme Court held that it was not error to do so of the trial court's own volition.

The question raised by the eighth assignment may be disposed of by the fact that the jury did not regard the defense of "lack of premeditated design as a result of intoxication" as established; therefore, the purpose with which the defendant drank the whiskey could have been of no importance or relevancy. The defendant's attorney asked him if he drank the whiskey for the purpose of strengthening his mind in order to kill the woman. The

State attorney objected to the question and the objection was sustained. The question, if answered in the negative, could have been of no benefit to the accused, whereas it would have been disastrous to him if answerd in the affirmative.

During the trial the defendant took the stand as a witness in his own behalf. During his cross examination he was asked if he had been convicted of crime. It developed, during the examination of the witness upon the subject, that he had been tried in Duval County and convicted upon a charge of assault and battery. It was erroneous and unnecessary to press the inquiry as to the conviction of crime to the point where the particular offense was named; because such course seemed to be for a purpose different from that on which the question is allowable as to a witness' former conviction of crime. It is to discredit him as a witness, but to press the inquiry as to the character of the particular crime that it may be shown to be of a similar character to that for which he is being tried is to use the rule for an improper purpose and to secure for the State an advantage which it does not desire. But it seems in this case that the error was harmless because the defendant himself admitted, while he testified in his own behalf, that he attacked the woman and killed her. It was not as if there was any doubt as to identity of the slayer or motive for the act that information of the nature obtained by such questioning might clear away. It was utterly useless and superfluous for any conceivable purpose and wholly without prejudice to the defendant for that reason.

. The evidence of his guilt was ample; his own statement confirmed it and the degree of his intoxication, if it existed, aggravated it if possible. Why should it be considered necessary, upon the one hand, or harmful, upon the

other, to show that once before the defendant had been convicted of assault and battery upon some unknown person?

We have found no error in the record of the trial of this case so the judgment is affirmed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.