J. A. MARTIN, *alias* JAKE MARTIN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed January 7, 1924.

1. When a defendant in a criminal prosecution testifies as a witness in his own behalf, the State has the right on cross examination to interrogate him as to whether he has previously been convicted of a criminal offense. He may be contradicted by the record of his conviction should he deny conviction, but if he answers in the affirmative it is not permissible to question him as to the nature or character of the crime of which he was convicted merely to show that it was of the same character as the one for which he is then being tried.

2. When identity is uncertain or motive doubtful, evidence of conviction of similar offenses is not admissible unless such relation exists between them that proof of one tends to prove the commission of the other.

3. It is not error for the trial court to exclude evidence offered to impeach a witness called by the party seeking to impeach

him when his evidence is not adverse nor the witness unwilling and his testimony is not a surprise to the party calling him.

4. It is not error to decline to give an instruction which although it contains sound propositions of law and is applicable to the evidence has been fully covered by other instructions already given by the court.

5. Evidence examined and found sufficient to sustain a verdict of murder in the first degree.

This case was decided by Division A.

A Writ of Error to the Circuit Court for Walton County; A. G. Campbell, Judge.

Judgment affirmed.

*D. Stuart Gillis,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant Attorney General, for the State.

ELLIS, J.—The plaintiff in error was indicted in the Circuit Court for Walton County and convicted of the murder of Henry Dannelly. The jury recommended the defendant to mercy and he seeks to reverse the judgment entered on such verdict.

On Sunday, November 26, 1922, a party, consisting of six persons, got in an automobile and drove toward the home of one of the occupants of the car. The deceased and a woman sat on the front seat with the driver. The defendant and two others were riding on the back seat. Several members of the party, including the deceased and the defendant, had been "drinking." As they proceeded on the way the de-

fendant used profane language several times and Dannelly, the deceased, remonstrated with him and asked him not to swear as there was a lady in the car. Arriving at the home of the defendant those on the back seat got out of the car and Martin, with an oath, invited all of them in. Two or three replied that they could not go in the house. Dannelly drew a pistol and pointing it at Martin told him not to draw his pistol. Martin walked away; Dannelly put his pistol down and Martin, coming around to the left side of the car in front, drew a pistol and presenting it at Dannelly, across the steering wheel, fired twice. The first shot entered the head of Dannelly, inflicting a wound from which he died soon afterward.

The defendant testified in his own behalf. While he was on the witness stand the State Attorney asked him if he had ever been convicted of a criminal offense, to which the witness replied in the affirmative. The State Attorney then asked "for what?" Meaning presumably to require the defendant to name the criminal offense for which he had previously been convicted. His counsel objected to the question but the objection was overruled and the defendant was required to answer the question, stating that he had been convicted of manslaughter.

Under Section 2706, Revised General Statutes, a "proposed witness" may be questioned as to his conviction of crime, and if he denies such conviction the record of his conviction may be produced to establish the fact. This is allowable as affecting the credibility of the proposed witness. Prior to 1901, Chapter 4966, persons who had been convicted of certain crimes were not competent witnesses. After the passage of that Act no person was disqualified to testify as a witness by reason of having been convicted of any crime except perjury; but conviction of crime could be shown to affect the credibility of the proposed witness.

In the case of Washington v. State, decided at this term of the court, we said that it was unnecessary to press the inquiry upon the defendant who had taken the stand in his own behalf to the point where he is required to disclose the character of the offense for which he was formerly convicted. In that case we held the question to be harmless, however, because there was neither doubt as to the slayer nor motive for the act which the admission of former conviction of a certain crime might tend to clear away. So in this case, while the question was unnecessary, it was not necessarily harmful, even if it was technically erroneous. This court has, since the passage of Chapter 4966, Acts 1901, seemingly approved a question directed to the defendant as a witness which sought to elicit the information that he had been previously convicted of a crime of the same character as the one for which he was then on trial. See Herndon v. State, 72 Fla. 108, 72 South. Rep. 833. But that point was not the one under consideration. The defendant in that case was tried for perjury for having falsely answered a question, during his trial for larceny, as to his conviction in another State of the crime of larceny.

The statute of 1901, above referred to, merely removed the common law restrictions upon a witness' competency so far as the conviction of crime rendered him incompetent and recognized the generally accepted truth that one who has been convicted of crime is not, however, entitled to the same credit as one without a criminal record. Under the old statute, Sec. 1096 Revised Statutes, 1892, manslaughter was not one of the crimes which disqualified one who had been convicted of such offense from becoming a witness. And in the absence of Section 2706, Revised General Statutes, or some similar provision, it would be doubtful if a witness could be questioned as to his conviction of such an offense merely to affect his credibility. But the Act of

1901, carried into the Revised General Statutes as Section 2706, almost completely removed the restrictions imposed by the prior act both as to competency and credibility as. affected by former conviction of crime.

Therefore, it is not a question of what crime a witness may have committed before, and for which he had been. convicted, but whether he had ever been convicted of any crime. If he has a criminal record, the theory of the statute is that it should affect his credibility although it does. not affect his competency unless the crime was perjury.

In a prosecution for murder, therefore, when the State Attorney undertakes to show that the defendant who offered himself as a witness was once before convicted of a similar crime to that for which he is then being tried he seeks to obtain an advantage in aid of conviction which the statute does not contemplate. When identity is uncertain. or motive. doubtful or purpose questionable evidence of conviction of similar offenses is not admissible, unless such relation exists between them that proof of one tends to prove the other. It is not competent to prove that one committed other crimes for the purpose of showing that he would likely commit the crime with which he is charged. See 10 R. C. L. 939. Although if the witness denies that he has ever been convicted the record may be introduced to prove that he has, and such facts form the basis for a prosecution for perjury. See Herndon v. State, *supra.*

But to attempt to use a fact which is irrelevant, has no relation to the issue being tried and is admissible for no purpose except technically to affect the credibility of a witness for the purpose of arousing suspicion and creating prejudice against the accused is to put the defendant at a disadvantage and the State in a false position. Such an error therefore would be considered harmful in a case where the identity of the accused as the perpetrator of the alleged

crime was doubtful or any necessary element of the offense depended for its proof, among other things, upon the inference that might be drawn from a former conviction of a similar offense.

In the case at bar, however, we are of the opinion that the error was harmless. The evidence amply justified a conviction of murder in the first degree. The defendant admitted the killing of Dannelly and his version of the affair was evidently regarded by the jury as a fabrication.

The defendant introduced as a witness a man named Springer, the man who drove the automobile in which the shooting occurred. Under the questioning of defendant's counsel the witness said that when they came to Martin's gate and the defendant had gotten out of the automobile Dannelly said to the girl, who was in his lap: "Move so I can hold this gun on Martin." This testimony seemed to be something of a disappointment to defendant's counsel, who offered to show that at the coroner's inquest the witness had said in testifying that Dannelly "dared Martin to draw" and when "Martin walked around the car" Dannelly said to the girl: "Get off my lap so I can get my gun and shoot him," and, continued the witness, "I saw the gun and jumped out."

After much controversy, during which the jury was required to retire from the court room, as if some scene was to be enacted or utterance made in the case which they were not qualified to witness or hear lest it might render them incapable of exercising their judgment freely and without unconscious prejudice against the State, it appeared that the defendant was not surprised by the witness's testimony, who told defendant's counsel the day before that at the coroner's inquest he did not testify to the words defendant's attorney supposed Dannelly had used. The court

held that there was no ground for the impeachment of the witness by the defendant who called him.

There was no error in that ruling. See Sec. 2710 Revised General Statutes; Williams v. Dickenson, 28 Fla. 90, 9 South. Rep. 847; Adams v. State, 34 Fla. 185, 15 South. Rep. 905; Mercer v. State, 41 Fla. 279, 26 South. Rep. 317; Sylvester v. State, 46 Fla. 166, 35 South. Rep. 142.

The testimony of the witness was not adverse; he was not unwilling, he merely failed to testify, not as counsel expected he would, but rather as counsel wished he might although he was notified by the witness that he would not. The trial judge did not abuse the discretion which in such situations is vested in him.

The next assignment of error questions the sufficiency of the evidence to sustain the verdict. The point was incorporated in the motion for a new trial under the first, third and fifth grounds. There is no merit in the position taken by counsel upon this phase of the case. The unexpected and unjustified attitude of Dannelly toward Martin, if it occurred, when the latter got out of the automobile at his gate may have offended and irritated him to a degree, as his counsel urged, but that he acted under the influence of blind and unreasoning rage and fired while dominated by a passion that destroyed reason and rendered premeditation impossible there is not the slightest evidence to support. But on the contrary the defendant seemed to act with the cool, deliberate cunning of the pitiless and unrelenting killer. Offended by the attitude of the deceased toward him he pretended to walk away and disclaim any resentment, all the while watching the deceased until the latter laid down his pistol, and then whipped out his own and fired the fatal shot as he caught the deceased off his guard. There is no circumstance shown in the testimony of the witnesses for the State and those for the defense, except the defend-

ant's own disconnected account of the transaction, from which a reasonable inference could be drawn that the defendant fired either in self defense or under a passion of resentment which controlled his impulses.

Exception was taken to the refusal of the court to give the fourth instruction requested by the defendant. It was requested upon the theory of a shooting in self defense; and in it the jury were to be told that if "Dannelly, without justification committed an assault upon Martin, with a deadly weapon and did or said anything that led Martin, as a reasonable, cautious and prudent man to believe that he was in imminent danger of death or great bodily harm, and that under such circumstances Martin shot and killed Dannelly, then such killing was justifiable and you should find the defendant not guilty."

The court had fully instructed the jury upon the law of self defense. The charge requested was merely a repetition, in so far as it contained sound doctrine. As to its application to the evidence it might be considered appropriate but it was misleading and unsound in one of its propositions at least. If Dannelly's attitude toward Martin could be considered as an assault, neither that nor what he might have said afterwards or at the time would have justified the defendant in taking his life, unless the appearance of danger was so apparently real that a prudent and cautious man would have deemed his life in imminent peril or himself in danger of great bodily harm and that the taking of the defendant's life was apparently necessary to avert the danger. The charge was lacking in many qualifications attached to the legal right to take the life of a human being. See Peaden v. State, 46 Fla. 124, 35 South. Rep. 204; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251; Snelling v. State, 49 Fla. 34, 37 South. Rep. 917; Stafford v. State, 50 Fla. 134, 39 South. Rep. 106; Owens v. State, 64 Fla. 383,

60 South. Rep. 340; Smothers v. State, 64 Florida, 459, 59 South. Rep. 900.

There was no error in the refusal to give the requested instruction.

No error having been made to appear by the record the judgment of the court is hereby affirmed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.