JIM WILSON v. STATE.

183 So. 748.
Division B.
Opinion Filed October 11, 1938

*Purl G. Adams* and Lloyd C. Powell, for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

PER CURIAM.—Plaintiff in error, Jim Wilson, was convicted in the Circuit Court of Okaloosa County, Florida, for a violation of Section 7383 C. G. L., and was sentenced to the State Penitentiary at hard labor for a period of four years, and on writ of error here seeks a reversal thereof in this Court. The lower court granted a motion for severance and the defendant was placed on trial alone. During the progress of the trial in the lower court, the defendant, while on the stand, denied that he at any time had ever taken or removed wire or other fencing from the land described in the indictment and had never been convicted in any court for taking wire or other fencing, nor had he ever plead guilty to such a criminal offense.

The record shows that the State Attorney cross-examined the defendant while on the stand about a criminal offense of which the defendant had been convicted, as shown by the following proceedings:

"By Mr. Boggs:

"Q. As I understand, in September, 1935, the sheriff was chasing you and you didn't know it?

"A. He didn't chase us.

"Q. Didn't the sheriff run you down and Cleve Jones run you down—both chasing you and you didn't know it?

"A. He could have found us right at the car, the car was parked there—he had slipped up and taken the yodler off the distributor.

"Q. You say that 2 or 3 hundred yards from the same property you are accused of taking the wire from?

"A. There you are.

"Q. You know where the Marhoeffer land is?

"A. Oh, yes.

"Q. You were caught that night within 2 or 3 hundred yards of this fence?

"A. No, sir—I wasn't pulling no wire from that fence.

"Q. Where do you work—what work do you do?

"A. I saw logs for Cary Kelley.

"Q. You work six days or seven?

"A. Six days whenever I'm able.

"Q. Are you in poor health?

"A. Yes sir, pretty bad.

"Q. Your work doesn't hold out six days in the week?

"A. Yes sir, got enough of work for six days.

"Q. How long have you been working six days a week for him?

"A. I haven't been working but about three weeks for him now.

"Q. Where were you working before that?

"A. I was working for Mr. Jones.

"Mr. Adams: I don't see the materiality of that.

"Objection overruled. Exception noted."

The State Attorney offered in rebuttal Hon. Wilbur Osborne, County Judge of Okaloosa County, Florida, who testified, viz.:

"Q. I'll ask you to look at this criminal docket, page 154, case of State v. Jim Wilson and Ben Wilson—you have that case before you? .

"A. No, that case was handled by Judge Powell, Judge of the Court prior to my taking office.

"Q. The case came before Judge Powell, who preceded you as County Judge?

"A. Yes sir.

"Q. What disposition was made of that case—what does the record show?

"A. The record shows a plea of guilty was entered on the 9th day of January, 1936.

"Q. What was the sentence that was imposed—read that?

"A. It is ordered and adjudged that the defendants pay to the State of Florida, for the use of Okaloosa County, the costs of this prosecution—done and ordered at Crestview—and there's a notation that fine was suspended on payment of cost.

"Q. What was the offense with which Jim Wilson was charged?

"A. The offense of unlawfully taking down and cutting wire fence."

The State Attorney offered in rebuttal the testimony of Hon. John P. Steele, Sheriff of Okaloosa County, Florida, who testified, viz.:

"Q. You are John P. Steele, Sheriff of Okaloosa County?

"A. Yes.

"Q. Sheriff, the judgment of conviction Judge Osborne has just read into the evidence against Jim Wilson, involving the taking down of fence—were you a witness in that case?

"A. I arrested Jim that night.

"Q. Upon what land was he accused of taking down the fence?

"A. I know it as the Marhoeffer tract of land, West of the Okaloosa tower.

"Q. In reference to the case now on trial, was it the same land or different land?

"A. Same land, on the West side.

"Q. On the same tract of land?

"A. Yes sir.

"Q. Sheriff, I notice the defendant entered a plea of guilty. Was there any evidence to show the taking down of the fence, the wire of the fence?

"Mr. Adams: We object—he can't go into the facts of the case.

"Mr. Beggs: I withdraw that question.

"Q. Sheriff, do you know of your own knowledge of the tampering with the fence on the Marhoeffer land that night?

"Mr. Adams: We object to the question on the grounds that the record shows a plea of guilty, and such question would seek to explain the plea of guilty and impeach the record of the Court.

"Objection overruled.

"Reporter reads last question.

"Mr. Adams: We object further on the grounds that it seeks to charge the defendant with a separate and distinct offense other than the one he is on trial for.

"The Court: He is not being tried at this time on that particular offense, but it is in rebuttal of the testimony you brought out on his direct examination.

"Exception noted.

"A. Yes.

"Q. What do you know of your knowledge regarding the taking down of the fence?

"Mr. Adams: We move to strike this witness' testimony and object to the further testimony on the further ground that it seems to explain the judgment of conviction in the Court below, and it is immaterial and irrelevant and is offered only for the purpose of prejudicing this jury against this defendant.

"The Court: The objection is overruled. The witness testified he had never tampered with any fence on that land, and if the sheriff saw him, he can testify.

"Mr. Adams: We object further on the ground that it is too remote—the time the sheriff states was in '35.

"The Court: Your objection will still be overruled, because the witness in his testimony denied ever doing anything at all on the Marhoeffer land.

"Exception noted.

"A. I arrested Jim Wilson and Ben Wilson.

"Q. When was that?

"A. I can't give the date—I can look at the docket and tell.

"Q. That's the same time that Judge Osborne read?

"A. Same as Judge Osborne just spoke about. I went to the place where I got information and we thought somebody was butchering cattle and was watching out for some fellow, and I went down there and found a car a trailer parked about 150 feet from the Northwest corner of the particular fence, and I sent—I believe D. Dubose was with me at that time—I sent him to take the brake box—that's what I call it, out of the distributor, and I went on back West about a mile and turned around and come back, and they were trying to crank their car. I stopped and they said they were having a little trouble cranking, and I told them I fooled with it, I took the brake box out, so I arrested them and brought them on back. Before I arrested them, I had heard the wire squeaking and I went out to watch them and they ran off, and I overtaken them—at least I drove around the other road and we met about 100 yards below the tower, so I took them back down there—I left one there and took the other, one at a time—and their tracks on the ground there corresponded with their shoes that they had on. Jim or Ben, I don't recall which one now, but one of the shoes was worn on the bottom of the foot, a place about as big as a dollar, and it corresponded there, and they took the shoe off and it corresponded all the way up and down the fence. Then I takes him back and gets Ben, and he claimed his shoe had been burned on the toe, which

ever one it was, across the toe, and it corresponded with the other track.

"Q. How much fence was loose there, Sheriff?

"A. A quarter and a half, or a half mile.

"Mr. Adams: We object on the same ground.

"The Court: There's no use to go into that.

"Q. You heard them and saw them and they ran?

"A. Yes sir.

"Q. And it was fire on the Marhoeffer land?

"A. Yes sir.

"Q. In the name of Charles H. Overman, Trustee, for the Marhoeffer interests?

"A. Yes.

"Mr. Adams: We desire to make a motion for mistrial on the ground that this witness' testimony is that all this took place in '35 and has the effect of prejudicing the jury against this defendant, and he can't possibly be held on an offense with such as that going on.

"Motion denied. Exception noted.

"Mr. Adams: In order to keep the record clear, we want to move the Court to strike this witness' testimony on the grounds, first, that it seeks to charge this defendant under a separate and distinct offense—second, such matters are entirely too remote—and third, because it seeks to explain the records of the Court wherein a Verdict was rendered.

"The Court: It is not offered to prove a substantive offense, but for the purpose of showing that the witness has been on the land, which he claimed he had not.

"Exception noted.

"Mr. Beggs: The State rests."

Counsel for plaintiff in error objected to the evidence because it tended to establish essentials of a separate and distinct offense different from which the defendant was

then being tried. The indictment or information charged the defendant with taking wire or fencing on the 12th day of March, 1938, in Okaloosa County, Florida, while the testimony *supra*, offered on the part of the prosecution in rebuttal referred to a previous case against the defendant alleged to have occurred in 1935, several months prior to the present charge and in no manner connected therewith or otherwise falling within the exceptions to the well established rule. This court has held by an unbroken line of authorities that evidence of another and distinct crime committed by the defendant, in no way connected by circumstances with the one for which he is being tried, is inadmissible: but proof of any fact, with its circumstances, even though amounting to a distinct crime, if it has some relevant bearing upon the issues being tried, is admissible. See Wallace v. State, 41 Fla. 547, 26 So. 713; Roberson v. State, 40 Fla. 509, 24 So. 474; Gafford v. State, 79 Fla. 581, 84 So. 602; Boyett v. State, 95 Fla. 597, 116 So. 476; Suarez v. State, 95 Fla. 42, 115 So. 519. Thomas v. State, 132 Fla. 78, 181 So. 337.

The rule and the exception thereto are well expressed in the opinion of Mr. Justice Strum in the case of Nickels v. State, 90 Fla. 659, text p. 685-6, 106 So. 479, viz.:

"Evidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty. Generally, therefore, it is harmful error to admit evidence of other or collateral crimes independent of and unconnected with the crime for which the defendant is on trial. Robertson v. State, 40 Fla. 509, 24 South. Rep. 474; Gafford v. State, 79 Fla. 581, 84 South. Rep. 602; 16 C. J. 586; 8 R. C. L. 210.

"To this general rule, however, there are several distinct exceptions, well supported by precedent, amongst which are that such evidence is admissible it is relevant as part of the *res gestae,* or tends to establish the identity of the person committing the crime laid in the indictment or where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime. The existing exceptions, however, ought to be carefully limited and guarded by the courts, both in number and in scope.

"Supporting the rule and exceptions above mentioned, see Killins v. State, 28 Fla. 313, 9 South. Rep. 711; Oliver v. State, 38 Fla. 46, 20 South. Rep. 803; West v. State, 42 Fla. 244, 28 South. Rep. 430; Ryan v. State, 83 Fla. 610, 92 South. Rep. 571; Wallace v. State, 41 Fla. 647, 26 South. Rep. 713; Roberson v. State, 40 Fla. 509, 24 South. Rep. 474; 16 C. J. 609, *et seq.;* Wharton's Crim. Ev. p. 31; Underhill's Crim. Ev. 151. See also the exhaustive annotations appended to People v. Molineaux (168 N. Y. 264; 62 L. R. A. 193). Supporting the exceptions as applied to prosecutions for rape, see: People v. Rardin, 255 Ill. 9, 99 N. E. Rep. 59; State v. Taylor (Mo.) 22 S. W. Rep. 806; State v. Taylor 118 Mo. 153, 24 S. W. Rep. 449; Thompson v. State, 11 Tex. App. 51; Davis v. State (Tex. Crim. App.) 23 S. W. Rep. 685; Parkinson v. People, 135 Ill. 401, 25 N. E. Rep. 764, 10 L. R. A. 91; Oakley v. State, 135 Ala. 15, 33 South. Rep. 23; Harmon v. Territory, 15 Okla. 147, 79 Pac. Rep. 765."

A similar question was considered by this Court in the case of Washington v. State, 86 Fla. 519, 98 So. 603, when this Court said:

"During the trial the defendant took the stand as a witness in his own behalf. During his cross examination he was asked if he had been convicted of crime. It developed,

during the examination of the witness upon the subject, that he had been tried in Duval County and convicted upon a charge of assault and battery. It was erroneous and unnecessary to press the inquiry as to the conviction of crime to the point where the particular offense was named; because such course seemed to be for a purpose different from that on which the question is allowable as to a witness' former conviction of crime. It is to discredit him as a witness, but to press the inquiry as to the character of the particular crime that it may be shown to be of a similar character to that for which he is being tried is to use the rule for an improper purpose and to secure for the State an advantage which it does not desire. * * *"

Likewise in the case of Martin v. State, 86 Fla. 616, 98 So. 827, a similar question was considered, and said:

"In a prosecution for murder, therefore, when the State Attorney undertakes to show that the defendant who offered himself as a witness was once before convicted of a similar crime to that for which he is then being tried he seeks to obtain an advantage in aid of conviction which the statute does not contemplate. When identity is uncertain or motive doubtful or purpose questionable evidence of conviction of similar offenses is not admissible, unless such relation exists between them that proof of one tends to prove the other. It is not competent to prove that one committed other crimes for the purpose of showing that he would likely commit the crime with which he is charged. See 10 R. C. L. 939. Although if the witness denies that he has ever been convicted the record may be introduced to prove that he has such and such facts form the basis for a prosecution for perjury. See Herndon v. State, *supra* (72 Fla. 108, 72 So. 833)."

The case of Boyett v. State, 95 Fla. 597, 116 So. 476, opinion by Mr. Justice Brown, involved the same principle

of law as the case at bar. Plaintiff in error and Allen Eiland were jointly indicted for breaking and entering a store building. A severance was granted and the prosecution, over the objections of the defendant, established during the progress of the trial commission by co-defendant of several other burglaries over a period of several months preceding the crime for which plaintiff in error was being tried. Mr. Justice Brown, speaking for the Court in reversing the case, said:

"The general rule is that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. Evidence that a defendant has committed a similar crime, or one equally grave, has a tendency to promote a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty.

"While there are several well recognized exceptions to the general rule above mentioned, this case does not appear to fall within the operation of any of them. The general rule should be strictly enforced and should not be departed from in any case unless the particular case comes within one of the recognized exceptions and clearly justifies such a departure. See Nickels v. State, 90 Fla. 659, 106 So. 479, and other cases cited in Fla. Digest, Vol. 1, page 587; Vol. 4, 198; 16 C. J. 586-592; 9 C. J. 1068."

See Green v. State, 121 Fla. 307, 163 So. 712.

While the charge of the court was liberal in behalf of the defendant, we do not think it sufficient to cure the error in admitting into evidence the testimony seasonably objected to. For the error pointed out the judgment is reversed and a new trial granted.

It is so ordered.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.