136 So.2d 897

Calvin **COFIELD**

v.

**STATE.**

**8 Div. 775.**

Court of Appeals of Alabama.

Oct. 31, 1961.

Rehearing Denied Nov. 28, 1961.

Howell T. Heflin, Tuscumbia, for appellant.

470

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Herbert D. Schaefer, Legal Research Aide, Montgomery, for the State.

HARWOOD, Presiding Judge.

This appellant has been adjudged guilty of assault with intent to rape. The victim of the alleged assault was Judy Faye Cofield, the 13 year old daughter of the appellant.

The evidence introduced by the State tends to show that in September 1960, Judy Faye was living with her mother and five other brothers and sisters, at Blackfish Lake, Arkansas. The appellant showed up at their home about two o'clock on an afternoon with another man, and at five o'clock that afternoon the appellant, his friend, Mrs. Cofield, and all of the children left for Alabama in an automobile. Both the appellant and Mrs. Cofield had relatives living near Spruce Pine, Alabama.

Arriving in Alabama, the party divided up, with Mrs. Cofield and some of the children going to her brother's home to stay, while the appellant and one or two of the children, including Judy Faye, went to the home of the appellant's father, Mr. Henry Cofield.

Judy Faye testified that after she had been at her grandfather's for a few days, the appellant and the grandfather came in about 11 o'clock one night. Both men were drunk. Her father asked her if she wanted to drive over to the house where her mother was staying, and Judy Faye replied that she did.

The appellant and Judy Faye set out in the appellant's automobile, with the appellant driving. After they had gone down the highway about a quarter of a mile, the appellant turned off into a side road and proceeded down this side road some distance, when he parked the car near what is described in the record as a junk yard.

Here, according to Judy Faye, the appellant proceeded to attempt a sexual assault upon her, and succeeded in removing her panties. In the course of the struggle, they left the automobile and the appellant was on top of Judy Faye on the ground when an automobile with headlights burning was observed coming down the side road. The appellant jumped up with the exclamation, "Goddamn it, there is the sheriff" and ran off. Judy Faye got into the car and succeeded in getting the engine started. However, being unfamiliar with the operation of an automobile she backed the car into a stump in her efforts to leave the scene. She thereupon ran into the woods and after some wandering found a lumber truck parked in the woods and spent the rest of the night there. About daylight she emerged from the truck and again wandered in the woods until she heard the voices of some men who were searching for her and thereupon went to them.

During the struggle with her father Judy Faye testified that she kept saying, "Don't Daddy, don't Daddy, remember I am your daughter."

It appears that the scene of the alleged assault was near a sawmill, and three of the workmen were spending the night in a bunkhouse at the sawmill. They testified that they heard the sounds of a struggle, and could hear a girl crying and saying, "Please don't, oh, no, Daddy, please don't." After some time they decided to investigate and drove their car into the side road. This apparently was the car

which the appellant thought was the sheriff's automobile. However, they did not continue their approach but decided to go for help. They went to Mr. Luna Kent's house and with Mr. Kent they returned to the scene. Here they found the appellant's abandoned automobile. A pair of girls slippers and panties were found in the car. It was about midnight that they returned to the car. They then searched in the area of the car until about 3:00 A. M., but found no one.

Mrs. Virginia Cofield, the mother of Judy Faye, testified that the appellant came to her brother's house about daylight on the day in question and inquired if Judy Faye was there. When informed that Judy Faye was not there, he said he had been home in bed and Judy Faye had gone off in a car with somebody. Later he said he knew Judy Faye was all right, that she was just scared and ran off.

In his own behalf the appellant testified that upon his release from the Federal penitentiary in Leavenworth, Kansas, he had proceeded to Arkansas where he had gotten his family to take them to Alabama. His time was limited as he was to report to a parole officer in Chicago in a few days. He had come to Alabama for the purpose of settling a charge of embezzlement pending against him. He had experienced some difficulty in getting sufficient funds to settle the embezzlement case, and was attempting to sell a TV set he had with him in order to raise some money. It was the appellant's contention that he and Judy Faye had started off on the night in question to drive to a man's house in connection with the TV transaction. He insisted that he had let Judy Faye drive the automobile, and that on the ride they got into an argument. When the car was stopped on the side road, Judy Faye took possession of the keys to the automobile. He attempted to get the keys away from her and their argument waxed strong, continuing for about thirty minutes. In order to cool down his temper, he got out of the automobile and walked down the road. During this time Judy Faye jumped out of the car and disappeared. He thought she had gotten into the automobile he had observed coming down the side road, and had further thought that this automobile belonged to the sheriff.

He remained in the vicinity of his car until about 2:00 A. M., then wandered about in the woods for a time, and before daylight had come to a lighted house. The man at the house refused to drive him to his father's, and he later made his way home on foot, arriving at his father's home about 6 A. M. Later that morning the appellant contacted Judy Faye's mother and told her that Judy Faye was lost. They then went to Spruce Pine, Alabama, and called the sheriff of Franklin County to inquire whether or not the sheriff had seen Judy Faye. Sheriff Hovater stated that the appellant first told him that Judy Faye had gone off with a boy, but later stated that he had stolen some whiskey and he and Judy Faye had driven to the area in question in order to bottle the whiskey, during which time Judy Faye ran off.

The appellant denied vehemently having made any such statement to Sheriff Hovater.

On cross-examination the appellant testified that during his argument with Judy Faye, he had accused her of running around with men in Arkansas, and she had replied, "No Daddy, no."

The appellant denied that he saw or heard any people, that is Mr. Kent, or the sawmill workers around his car at any time during the night.

He also denied that he had ever written any letters to the prosecutrix or her mother containing any such matter as that testified to by Mrs. Cofield.

As before stated, Mrs. Cofield, the mother of Judy Faye, testified as a witness for the State. In the course of her testimony, she testified that a letter had come addressed to "Betty" which was in fact a letter to Judy Faye from the appellant. She testified that she had seen and read this letter and that it was in the appellant's handwriting with which she was familiar. She further testi-

fied that she had seen Judy Faye burn the letter, upon the occasion of some of Judy Faye's friends coming to visit Judy Faye. Judy Faye also testified that she had burned the letter because she did not want her friends to know of its contents.

In this background the record shows the following during the direct examination of Mrs. Cofield:

"Q. Just tell the jury what he said in the letter in regard to what happened on that occasion we are asking you about in this wooded area on the night he claims Judy got lost?

"Defendant objects, the letter would be the best evidence, it is hearsay what she says, and we would not be able to have the letter, we would be deprived of the right to cross examine her on this letter itself, and as such she did not see him write the letter and we feel it is entirely prejudicial to the rights of the defendant and we therefore object to it.

"Objection overruled.

"Defendant excepts.

"By the Court: Go ahead and answer the question, please mam.

"Witness said: 'You want me to tell what was in the letter?'

"By the Court: Yes, mam.

"A. He just said he was sorry he done what he had, he didn't know what he was doing or something or another like that, I don't remember what all he said.

"Defendant objects and moves to exclude her answer on the ground that it is hearsay and the proper predicate had not been laid, it is not shown that it was voluntary any such statement that was made, it has not been proven that the man made the statement, and further it is prejudicial.

"Motion overruled.

"Defendant excepts."

The fact of Mrs. Cofield having seen and read the letter, and her testimony that it was in appellant's handwriting, was admissible as primary evidence. Bell v. State, 156 Ala. 76, 47 So. 242.

The evidence further showing that the letter had been burned without fraudulent intent, then, testimony by Mrs. Cofield as to its contents was admissible as secondary evidence.

Negligent destruction of a document is no bar to its proof by secondary evidence. While its fraudulent destruction would exclude secondary evidence, a fraudulent destruction will not be presumed but must be made to appear. May Hosiery Mills v. Munford Cotton Mills, 205 Ala. 27, 87 So. 674.

Counsel for appellant argues however that the contents as testified to by Mrs. Cofield were inculpatory admissions in the nature of a confession, and that a predicate of voluntariness was required before the statements in the letter could be properly received in evidence.

In Alabama, inculpatory admissions in the nature of a confession—that is, directly relating to the fact or circumstances of the crime, and connecting the defendant therewith—are subject to the same rules of admissibility as direct confessions and are admissible only after a predicate of voluntariness is established. Baker v. State, 35 Ala.App. 596, 51 So.2d 376.

If, for the sake of argument, it be considered that the vague statement in the letter as testified to by Mrs. Cofield, "He just said he was sorry he done what he had, he didn't know what he was doing, or something or another like that, I just don't remember what all he said" was an inculpatory admission in the nature of a confession to the extent that it tended to connect the accused with the wrongful act, and placed him at the scene thereof (see McGehee v. State, 171 Ala. 19, 55 So. 159), this concession would not, under our decisions, render the contents of the letter inadmissible.

In Oakley v. State, 135 Ala. 15, 33 So. 23, 26, the appellant had been convicted of rape. During his trial, and over his objections, letters he had written the prosecutrix and her mother, while appellant was in jail, were received in evidence. One of the grounds of objection interposed to the admission of the letters, was that the letters contained a confession, and there had been no predicate laid. In the letter to the prosecutrix, the appellant said that if he had mistreated her, he hoped she would forgive him and that he would never do so again. In the letter to the mother, he stated that if he ever got out of the trouble, he would never do so again. In considering the propriety of the admission of these letters the court said:

"There was no error in overruling defendant's objection to the introduction of the letters offered by the state * * *."

In Bracken v. State, 111 Ala. 68, 20 So. 636, 637, a prosecution for seduction, the court stated:

"The letters of defendant to the prosecutrix written after the date of the alleged seduction, were properly admitted in evidence."

And in Parker v. State, 10 Ala.App. 53, 65 So. 90, a murder case, a paper writing, or note given by defendant to another with a request that it be delivered to a third party, was held to be properly admitted in evidence, the court stating:

"It was identified as the same paper that the defendant had given to the witness and contained matter having on its face a tendency to incriminate the defendant."

In Rex v. Derrington, (1826) 2 Carrington and Payne 418, it is stated that there are only two instances in which an incriminating letter by an accused is not admissible, first, where the letter is shown not to be voluntary, and second, where the letter is a privileged communication. To this should also be added, as a third ground for denying admission of such letter, where it is shown that the letter was fraudulently destroyed by the party offering it, as in an attempt to suppress evidence.

Counsel further argues that Mrs. Cofield's testimony as to the contents of the letter was improperly admitted in that one testifying as to the contents of a lost instrument must be able to speak clearly as to its tenor and contents. See 54 C.J.S. Lost Instruments § 13.

Mrs. Cofield's testimony in regard to the contents of the letter was:

"He just said he was sorry he done what he had. He didn't know what he was doing or something or another like that, I don't remember what all he said."

Certainly that part of Mrs. Cofield's testimony, "He said he was sorry he done what he had" is sufficiently definite. Also her testimony, "He didn't know what he was doing or something like that * * *," we think clearly indicates the tenor of that part of the contents of the letter. The qualification "or something like that" was nothing more than an indication that the substance of the letter was being recounted. Its tenor was yet clear. Her further statement, "I don't remember what all he said," merely relates to other portions of the letter which the witness did not attempt to recount.

[4] No error resulted from the court's ruling permitting Mrs. Cofield to testify to the contents of the letter.

■ Counsel for appellant further contends that error infects this record as a result of the court's rulings in connection with objections interposed to certain portions of the argument of the solicitor to the jury.

The first instance is as follows:

"Mr. Heflin objected to Mr. Graham's statement: 'He confesses he has been a three time looser,' that is highly

prejudicial in his remarks in that he called him a three time looser, and we feel that it is highly prejudicial and we object. . .

"Objection overruled.

"Defendant excepts.

"Mr. Heflin: At this time we also interpose a motion for a mistrial on the basis of Mr. Graham referring to the defendant as 'a three time looser.'

"Motion overruled. .

"Defendant excepts."

We consider the above argument too fragmentary and inconclusive to serve as a basis of review. The appellant had testified that he had been convicted in three separate automobile theft cases. Without some indication of the context or frame in which the statement was made, to say it was injurious would require resort to speculation on our part. Certainly the quoted statement falls far short of the argument declared to be prejudicial in Stephens v. State, 252 Ala. 183, 40 So.2d 90, 93, wherein the solicitor argued to the jury:

"I submit to you that a twice-convicted thief is not entitled to consideration. You might give a man one more chance, but there is no reason why any decent, law-abiding man should give a thief a chance after he is twice convicted."

After pointing out that evidence of convictions involving moral turpitude is admitted only as affecting the credibility of a witness, the court wrote:

"We think it clear that the purpose and effect of the language used by the assistant solicitor, to which the defendant duly objected, was to insist upon its misappropriation by the jury and to its use by them as evidence of the defendant's guilt of the charge for which he was being tried. Such an argument is calculated to appeal to the not unnatural belief of the jury that a person who is guilty of one or more serious transgressions of the law is likely to have committed another. See Underhill's Crim.Ev., 4th Ed., § 180."

As before stated, the fragmentary character of the argument contained in the objection prevents an application of the doctrine of the Stephens case, supra, to the instance now under consideration.

■ The record further shows these additional objections during the solicitor's argument:

"Mr. Heflin objects to Mr. Graham's statement: 'Can you imagine such an experience for your child or your daughter?' We object to his statement, 'Can you imagine such an experience with a man like the defendant over here for your child and your daughter?' We object to his use of those words and on that basis of putting the jury in that position.

"Mr. Graham: I think I have a right to argue the case.

"By the Court: I overrule the objection.

"Defendant excepts."

In British General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763, 767, 768, the court was considering an argument wherein it had been stated, among other things:

" * * * We can't insure it anywhere else, so you are just out, big boy, we are sorry. *How would you like to have that happen to you?*" (Italics ours.)

In considering the above argument our Supreme Court wrote:

"We do not think these remarks were so improper and prejudicial as to justify a reversal of the trial court. It is generally held that it is improper to ask the jury to divest themselves of their impartial position and place themselves in the shoes of the plaintiff, Kahn v. Green, Tex.Civ.App., 234 S.W.

2d 131; F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681; 53 Am.Jur., Trials, § 496, p. 401 (authorities cited by appellant).

"However, we have said that we 'will not too narrowly criticize arguments of counsel in the matter of inferences drawn for illustration or figures of speech adopted in pressing a point.' Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 578, 80 So.2d 288, 295; Jones v. Colvard, 215 Ala. 216, 218, 109 So. 877. Nor should we encroach on the trial court's discretion in the matter of argument of counsel. 'Much must be left in such matters to the enlightened judgment of the trial court, with presumptions in favor of the ruling.' Smith v. Reed, 252 Ala. 107, 112, 39 So.2d 653, 657; Birmingham Electric Co. v. Mann, 226 Ala. 379, 381, 147 So. 165, 166.

"Regardless of the propriety or impropriety of the remarks of counsel in the case at bar, we do not feel there has been a showing of injury to appellant requiring a reversal. As stated in Birmingham Electric Co. v. Perkins, 249 Ala. 426, 430, 31 So.2d 640, 642."

While the above was a civil case, we think the principle enunciated quite applicable to the present case. The evidence here presented by the State was abundant in its tendencies establishing the appellant's guilt of the heinous crime with which he was charged, while the testimony of the appellant was in many aspects unimpressive to one reading the record. Apparently the jury, as evidenced by their verdict, so concluded.

During his oral charge to the jury, the court instructed the jury as follows:

"Gentlemen, I charge you that flight, if there was flight, of a person charged with a crime, is a circumstance which the jury may take into consideration in determining his guilt. It may or may not be considered as a circumstance tending to prove guilt, as this depends on whether the motive of flight had its origin in the consciousness of guilt and pending apprehension of being brought to justice or whether it is attributable to other or more innocent motives."

■ In view of Judy Faye's testimony that the appellant ceased his assault on her as a car's headlights were seen approaching and appellant's testimony that he did not see or hear the searchers at his car, though in the vicinity of the car, and that he did not arrive at his father's house for some four to six hours after Judy Faye, as he alleges, had run off, fully justified the court's instruction as to the bearing of possible flight upon the issues.

Charges 1, 2, 3, and 4, requested in writing by the appellant, were affirmative in nature, and properly refused under the developed evidence.

Charges 5, 11, 12, and 13 were sufficiently covered by the court's oral charge, and refused without error. Gordon v. State, 40 Ala.App. 214, 110 So.2d 329; Gordon v. State, 268 Ala. 517, 110 So.2d 334.

Affirmed.