BOOKOUT, Judge.
First degree murder; sentence: life imprisonment.
Several eyewitnesses testified that on September 23,1976, the victim, Will Starks, was walking up the front steps of a neighbor’s house when he was shot and killed. He was unarmed and was carrying only a bucket to get some water for his horse. The appellant drove up, parked across the street, got out of his automobile with a shotgun, and approached the victim. When appellant was about eight feet from the victim, he called out, “Willie,” and as the victim turned, appellant shot him.
The appellant made the following statement to officers which was admitted into evidence:
“This evening I saw Will Starks walking across the field on Galloway Road. We had been having trouble that afternoon. He had been chasing me and threatening to kill me. I just decided it was me or him. I pulled up beside him and asked him why he kept on messing with me. I don’t remember what he said. He was crossing the road and I got my shotgun out of the back seat and I shot him one time. Then I walked back and put my gun on the hood of my car and told them to call the Law.”
Witnesses for both the State and the defense proved an undisputed prima facie case of murder which fully supports the verdict. Appellant raises three issues on appeal.
I
Counsel for appellant objected to testimony from the coroner of Pike County as to the cause of death. His objection was on the ground that the coroner had not been properly qualified as an expert witness to express an opinion as to the cause of death.
The coroner testified that he had held that office for approximately two years and that during that time he had had occasion to examine dead bodies to determine the cause of death, and to examine dead bodies in relation to the determination of point of entry wounds. He stated that he had examined approximately fifty to one hundred bodies with gunshot wounds. He stated that in the area of training, he had worked for a funeral home for ten years; that he had a bachelor of science degree in law enforcement with a masters degree in criminal justice and had taken several courses which dealt with “gunshots, guns and death.” He had attended various schools offered by the Department of Toxicology dealing with crimes and evidence. While his qualifications in the medical area appeared somewhat sketchy, he nevertheless had fairly extensive practical experience in examining dead bodies.
In Willingham v. State, 50 Ala.App. 363, 279 So.2d 534 (1973), cert. denied, 291 Ala. 803, 279 So.2d 538, this Court stated:
“It has been said that a person who is a coroner does not per se qualify him to express an opinion as to the cause of death. However, where experiential qualifications are shown, a person who is a coroner or undertaker may be qualified to testify to the cause of a particular person’s death. . .
Many persons other than physicians may possess the requisite qualifications in order to express an opinion as to the cause of death. For a detailed listing of many such persons and their qualifications, see Cobb v. State, 50 Ala.App. 707, 282 So.2d 327 (1973).
It appears to this Court that the coroner was sufficiently qualified by'knowledge and experience to give his opinion as to cause of death in the instant case.
*584 Yet, there is another equally important reason why the trial judge committed no error in admitting the coroner’s testimony. In addition to several eyewitnesses testifying that .they saw the defendant shoot and kill the appellant with a shotgun at close range, the appellant himself took the witness stand and admitted that he shot and killed the victim. This Court, when a similar question was presented in King v. State, 32 Ala.App. 134, 22 So.2d 448 (1945) held that such opinion evidence in no way affected the rights of a defendant where that defendant took the stand and admitted inflicting the fatal wound. Therefore, even had the coroner been unqualified to express an opinion as to cause of death, such testimony would have been without injury to the defendant, who admitted inflicting the fatal wound. Rule 45, Alabama Rules of Appellate Procedure.
II
Counsel contends that appellant’s inculpa-tory statement given to officers was not of a voluntary nature because appellant was “nervous” at the time.
The record clearly shows that the prosecutor established that every requirement of Miranda[1] was complied with, and that the statement was freely and intelligently given without duress or promise of favor. We know of no holding in any jurisdiction that a “nervous” defendant is incapable of giving an admissible statement to police officers. If such were the law, the in-custody statements of almost all defendants would be inadmissible in court, since the ordeal of arrest and questioning would make most people nervous. Appellant’s contention in this regard is devoid of even a scintilla of merit.
III
Appellant contends the trial court erred in giving the deadlocked jury an Allen[2] type charge. Although this Court does not favor such a charge, we nevertheless have recognized its approval by our Supreme Court. Ashford v. McKee, 183 Ala. 620, 62 So. 879 (1913); Strickland v. State, Ala.Cr.App., 348 So.2d 1105 (1977); Eady v. State, 48 Ala.App. 726, 267 So.2d 516 (1972) footnote by Harris, J., at p. 729.
Appellant’s counsel, in brief, argues that he objected to the Allen or “dynamite” charge, even though the record fails to show his objection. It is the duty of the appellant to perfect his appeal by seeing that a complete record is filed in the appellate court which reflects the points upon which he seeks review. We are bound by the record and cannot consider matter contained in briefs which is not on the face of the record. Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971).
AFFIRMED.
All the Judges concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).