[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 502 
On the 30th of May, 1980, the bullet-ridden bodies of Ralph Little and Donald Ray Faulkner, Jr. were discovered near the Little River Bridge on Highway 35 close to the Cherokee-DeKalb County line. The defendant was indicted and convicted for Little's murder. Alabama Code 1975, Section 13A-6-2 (Amended 1977). Sentence was life imprisonment.
The defendant has raised sixteen separate reasons why his conviction should be reversed. Many of these major arguments contain subdivisions presenting additional grounds for reversal. We have carefully and conscientiously reviewed every issue and argument presented by the defendant. We have written to most but not all. Despite the fervor and vigor with which this appeal is presented, our review convinces us that the defendant received a fair trial with *Page 503 
due and proper consideration for his fundamental rights.
 I
The defendant argues initially that the trial court erred in refusing to quash the jury venire because of prejudicial pretrial publicity.
At the hearing on this motion, Ms. Virginia Brock, a reporter for The Gadsden Times, was the only witness to testify. A number of newspaper articles were introduced into evidence to support the claim of prejudicial pretrial publicity.
Although some of the articles described the killing of Ralph Little as a "gangland-style slaying", the publicity was well within the confines of what may be termed generally acceptable journalistic reporting. The articles were non-inflammatory and of that class usually appearing in the public press in relation to somewhat sensational events and criminal proceedings thought to be of general interest. The articles expressed no positive opinion as to the guilt or innocence of the defendant. Andersonv. State, 362 So.2d 1296 (Ala.Cr.App. 1978). No venireman was called to testify.
"A motion to quash the venire should not be sustained or granted unless it is alleged and proved that the whole venire is tainted with prejudice." Harris v. State, 394 So.2d 96, 98
(Ala.Cr.App. 1981); Anno. 76 A.L.R.2d 678 (1961). This rule holds true even where some of the veniremen have been exposed to adverse newspaper publicity. Nickerson v. State, 283 Ala. 387, 217 So.2d 536 (1969).
There is no evidence contained in the record that even a single venireman read the allegedly prejudicial newspaper reports or had any knowledge of the facts of this case. Moreover, juror exposure to news accounts of the crime with which an accused is charged does not alone presumptively deprive the accused of due process of law. Murphy v. Florida,421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). "Qualified jurors need not, . . . be totally ignorant of the facts and issues involved." Murphy, 421 U.S. at 799-800,95 S.Ct. at 2036.
It is not the mere fact that a person has a personal or fixed opinion as to any of the issues involved in a criminal prosecution which renders that person incompetent to serve as a juror. However, a person is not qualified to serve as a juror where his opinion is so fixed that it would influence his decision so that he could not lay aside his opinion and try the case fairly and impartially according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231, 234
(Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala. 1978).
 "To hold that the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."
 Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).
"(T)he burden is on defendant to show to the reasonable satisfaction of the trial court that a fair and impartial trial and an unbiased and unprejudiced verdict cannot reasonably be expected." Nickerson, 283 Ala. at 390, 217 So.2d 536.
Where there is no record before this Court of any testimony taken in support of a defendant's motion to quash, this Court is unable to determine whether the allegations of the motion are true and cannot charge error to the trial judge in overruling the motion. Taylor v. State, 32 Ala. App. 570,28 So.2d 318 (1947).
As in Nickerson and Goldin v. State, 271 Ala. 678,127 So.2d 375 (1961), "we are left unconvinced, nor was it made apparent to the trial court, that the appellant could not, on account of these newspaper articles, have received a fair trial." Goldin,271 Ala. at 680, 127 So.2d 375.
 II
The defendant contends that the trial judge erred in denying his challenges for *Page 504 
cause to eight jurors who allegedly had "a fixed opinion that this does constitute murder." This statement is made by counsel in making the challenge for cause to the trial judge. The proceedings held on voir dire of the jury are not reported and the only "evidence" of counsel's challenge is that which we have just quoted.
Again defendant's allegations of error are not supported by the record. "Statements made by counsel are not evidence." Halev. State, 355 So.2d 1158, 1159 (Ala.Cr.App. 1978).
 III
The defendant alleges that the trial judge arbitrarily excused jurors. Again, the record does not support this contention. A trial judge is authorized to excuse veniremen for "undue hardship, extreme inconvenience or public necessity", Alabama Code 1975, Section 12-16-63 (b) (Supp. 1981), outside the presence of the parties and their counsel. Alabama Code 1975, Section 12-16-74 (Amended 1981). In excusing jurors much is left to the discretion of the trial judge. The record before this Court does not clearly and plainly show any abuse of that discretion.
 IV
There is nothing in the record to support the defendant's charge that the State "initiated the prosecution through the media." Also we find no evidence that the State, the trial judge or any of their agents authorized the release of the youthful offender conviction of the defendant. In view of the fact that there is no evidence that any prospective juror read any newspaper article containing such information or any article in which the defendant was accused of the arrest for or conviction of any crime, including the one now under review, the defendant's argument is without merit.
 V
It is argued that the circuit court lacked jurisdiction to try the defendant since the defendant was in the process of appealing the circuit court's denial of youthful offender status.
Youthful offenders are covered in Alabama Code 1975, Sections15-19-1 et seq. Juveniles are covered in 12-15-1 et seq. Rule 28, Alabama Rules of Juvenile Procedure provides for the appeal of any "final order, judgment or decree, including an order transferring a child for criminal prosecution, of the juvenile court." There is no statute or rule authorizing an appeal directly from the order of a circuit court denying a defendant treatment as a youthful offender. Denial of youthful offender status is an issue which may be considered by this Court on appeal of a defendant's conviction.
There is no inherent or inalienable right of appeal in a criminal case. State v. Gautney, 344 So.2d 232 (Ala.Cr.App. 1977). The right of appeal is a creature of statute and such statutes are strictly construed. Wood v. City of Birmingham,380 So.2d 394 (Ala.Cr.App. 1980). Generally, appeals lie only from judgments of conviction. Thornton v. State, 390 So.2d 1093
(Ala.Cr.App.), cert. denied, Ex parte Thornton, 390 So.2d 1098
(Ala. 1980). Thus there is no direct appeal from a ruling that an accused is not indigent for the purpose of appointing a free lawyer, Locke v. State, 333 So.2d 217 (Ala.Cr.App. 1976); or from an order remanding a defendant to custody following the dismissal of the indictment, Ex parte Shirley, 39 Ala. App. 634,106 So.2d 671, cert. denied, 268 Ala. 696, 106 So.2d 674
(1958); or from an order denying a defendant's motion to withdraw his guilty plea. Dawson v. State, 37 Ala. App. 16,66 So.2d 567, cert. denied, 259 Ala. 205, 66 So.2d 568 (1953).
Since there is no statute or rule providing for a direct appeal from the denial of an application for treatment as a youthful offender, the defendant had no right to appeal that denial directly to this Court. Consequently, the circuit court was not divested of jurisdiction pending this attempted appeal.
 VI
In testifying, State's witness Danny Smith, an Investigator for the District Attorney, *Page 505 
used a transcript of the defendant's tape recorded statement. The statement itself was neither offered nor introduced into evidence. Although the defendant filed a pretrial motion to produce the tape recording from which the written transcript was made, Smith testified that the tape recording had been erased and reused. Although the defendant alleges fraud and chicanery in the destruction of the tape recording, the record, even when viewed in a light most favorable to the defendant, shows only negligence on the part of the State's investigators in the reuse of the tape.
In view of the fact that the transcript was not introduced into evidence, the holding of Bennefield v. State, 281 Ala. 283, 202 So.2d 55 (1967), is not violated. In Bennefield, the court held that the stenographer who took down the interrogation of the defendant by a detective was the person who should testify as to the authenticity of transcription made from her shorthand notes. Here, Smith interviewed the defendant and tape recorded that interview. Although Smith did not transcribe the tape recording, he testified that he had listened to the tape and read the transcript and that the transcript was accurate. Smith's testimony established the authenticity of both the tape recording and the transcript.
Generally, sound recordings are admissible as corroborative of oral testimony if the parties who were present when the recording was made are available and testify as to the statements made. Voudrie v. State, 387 So.2d 248 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980).
Under the doctrine of present recollection revived, Smith was properly allowed to use the transcript to refresh his memory. Generally, see C. Gamble, McElroy's Alabama Evidence, Section 116.01 et seq. (3rd ed. 1977). Under this theory, Smith was not required to have made the writing used to refresh his recollection, Section 116.02 (2), and the writing used did not have to be an original if properly authenticated. Section 116.02 (8). "Negligent destruction of a document is no bar to its proof by secondary evidence. While its fraudulent destruction would exclude secondary evidence, a fraudulent destruction will not be presumed but must be made to appear."Cofield v. State, 41 Ala. App. 469, 473, 136 So.2d 897, cert. denied, 273 Ala. 706, 136 So.2d 904 (1961).
Although the defendant maintains that the stenographer who transcribed the tape recording is the only person who could authenticate the transcript, the stenographer could only testify that the transcript accurately reflected what was on the tape recording. Smith, who was present during the interrogation, who listened to the tape recording, and who read the written transcription, could properly testify that the transcript accurately reflected what was contained on the tape and that the tape recording accurately reflected that which was actually said during the interview.
Just as the oral testimony of a deputy sheriff with regard to the accused's confession was admissible as primary evidence notwithstanding the contention that the written confession was the best evidence in Sperling v. State, 57 Ala. App. 583,329 So.2d 641 (1976), so here, the oral testimony of Investigator Smith was admissible despite the destruction of the tape recording of the defendant's statement.
 VII
The defendant argues that the State did not lay the proper predicate for the admission of the results of the chemical analysis of the decedent's blood and urine for the purpose of determining alcohol content. See Webb v. State, 378 So.2d 756,757 (Ala.Cr.App.), cert. denied, 378 So.2d 758 (Ala. 1979).
For the results of the blood and urine tests to have been admissible, it must have been shown either that the tests were taken in conformity with Section 32-5-193, or the proper foundation for their admission must have been laid under general evidence principles. McGough v. Slaughter,395 So.2d 972, 977 (Ala. 1981); Commander v. State, 374 So.2d 910
(Ala.Cr.App. 1978), cert. quashed, 374 So.2d 921 (Ala. 1979). Here *Page 506 
the State failed to introduce "certified methods promulgated by the Board of Health for the administration of the test." Webb, 378 So.2d at 757.
However, even if the results of the blood and urine tests were improperly admitted because of the State's failure to lay a proper predicate, we fail to see how this evidence damaged the defendant. It was undisputed that the parties involved in this incident had been drinking. See Wiley v. State,389 So.2d 604 (Ala.Cr.App. 1980), holding that even if the admission of an autopsy report, which indicated that the cause of death was hemorrhage as a result of multiple stab wounds, was error, the error would not have resulted in any substantial injury to the defendant, in light of the fact that the coroner's opinion that the stab wounds were the cause of death was undisputed. The defendant offered absolutely no evidence to show that the deceased was either more or less intoxicated than what was shown by the State (0.03 blood-alcohol and 0.04 urine).
There was no evidence offered, or even implication present, that the deceased became violent or aggressive when under the influence of alcohol. There was, in fact, no evidence at all that drinking had any influence or effect upon the deceased's personality or character.
The jury was not charged on the statutory presumption of intoxication, but only on intoxication as a defense.
After reviewing the circumstances of this case, we find that the admission of the results of the chemical tests for intoxication on the deceased did not harm the defendant. Rule 45, A.R.A.P.
 VIII
The defendant alleges that the demeanor and behavior of the trial judge prevented him from receiving a fair trial and resulted in a denial of due process. Serious charges of intimidation and impartiality are leveled against the trial judge.
In particular, the defendant contends that the judge's private reprimand of defense counsel was merely an effort at intimidation. From the record:
 "THE COURT: Mr. Beaty (Defense Counsel), I feel like I have been pretty patient throughout the course of this trial in tolerating some of your uncivil outbursts and in tolerating your attitude of disrespect for the Court. You have a responsibility, as we all know, to represent your client to the best of your ability, but you also have a responsibility to this Court to be respectful of it and to conduct yourself in a civil manner in the trial of a case. And I expect you to do that during the duration of this trial. There is just no reason for you to demonstrate such a disrespectful attitude toward the Court and I'm not going to tolerate it any longer."
Defense counsel denied any intent to be disrespectful to the court and maintained that he was merely attempting to represent the defendant as best as possible.
The following portion of the record is also useful in deciding this issue.
 "MRS. BUSH (Defense Counsel): For clarification, Judge, I would like to know specifically how he (Mr. Beaty) has been disrespectful so that we might know in the future. I agree with Mr. Beaty he's acted in this case like he's always acted in the seven and a half years I have practiced law, and I'm not saying he would object in the same way I would, but I don't see where he has displayed any disrespect for the Court.
 "THE COURT: In my judgment the manner in which he has excepted to the Court's rulings and the manner in which he has conducted himself at times during the trial has appeared disrespectful to the Court, and I'm asking you, Mr. Beaty, not to show that disrespect."
In response to the request that the judge "spell out in the record in detail" what he was talking about, the trial judge replied, "I think we all know what I'm talking about."
A trial judge has a duty to be thorough, courteous, patient, punctual, just and impartial. Yet he is not required to be *Page 507 
a "Great Stone Face" which shows no reaction to anything that happens in his courtroom. Allen v. State, 290 Ala. 339,276 So.2d 583 (1973). A trial judge who uses language which tends to bring an attorney into contempt before the jury, or makes any intimation which tends to prejudice the attorney, commits reversible error.
The language of Dennison v. State, 17 Ala. App. 674,88 So. 211 (1921), is instructive in deciding this issue.
 "Occurrences of this character, as disclosed by the record, are very regrettable and are to be deplored. They could be obviated if all those connected with the trial would be careful to accord to every one, also so connected, the high degree of courtesy and respect expected, or desired, or demanded by himself. An attorney at law is an officer of the court, and as such is under the duty to deport himself with dignity and circumspection, and upon all occasions to manifest and exhibit a marked respect for the court in which he practices, and for the judge thereof, as well as for all officers of court, parties and their witnesses, and for the juries in attendance. The statutory requirement in this connection is that an attorney must maintain due respect to courts of justice and judicial officers. Code 1907, Section 2985, subd. 2. In return, he is entitled to similar treatment from the trial judge, and most certainly to the extent that the interests of his client will not be prejudiced.
 "The trial judge, as a natural consequence of his position and the many duties devolving upon him, is necessarily vested with much discretion in the conduct of the trial of causes, and, unless it clearly appears that there has been an abuse of this discretion, appellate courts will not interfere to control such discretion, but will presume that one occupying so important a position as that of circuit judge will accord to all litigants in his court the fair and impartial trial provided for in the Constitution of this state. That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause."
Dennison, 17 Ala. App. at 676, 88 So. 211.
Our review of the record discloses that the trial judge cautioned both counsel for the State and counsel for the defendant during the course of the trial. The judge's remarks to defense counsel in this case were far from the character of those remarks and comments condemned in Dennison.
The record of the defendant's trial, upon which our review must be based, is composed only of the words which were spoken by the participants in the proceedings. It does not contain a description of the manner or attitude in which those words were spoken and does not directly reflect the demeanor of the parties. The trial judge was in the best position to observe the conduct of the parties and we must indulge the presumed correctness of his judgments in this regard. Jolly v. State,405 So.2d 76 (Ala.Cr.App. 1981).
Both sides fought a hard and apparently emotional battle in the vigorous discharge of their respective duties. Under such circumstances the difficult task of the trial judge became even harder. After a careful review of the record, we find no error in his actions and comments.
 IX
The photographs of the body of the victim were properly admitted into evidence. "The gruesomeness or inflammatory nature of a photograph is not grounds for exclusion, where it has a reasonable tendency to prove or disprove some material fact in issue, or which may be in dispute or material."Braswell v. State, 371 So.2d 992, 998 (Ala.Cr.App. 1979). *Page 508 
 "Courts and juries cannot be too squeamish about looking at unpleasant things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it." Baldwin v. State, 282 Ala. 653, 656, 213 So.2d 819 (1968).
A photograph which sheds light on the character and location of the wound on the body of the victim is admissible even though it constitutes cumulative evidence upon a matter not disputed.Turk v. State, 347 So.2d 588 (Ala.Cr.App. 1977). Photographs are admissible to corroborate testimony. Palmore v. State,283 Ala. 501, 218 So.2d 830 (1969); Grant v. State, 250 Ala. 164,33 So.2d 466 (1948).
 X
The defendant argues that the trial judge erred in refusing to require the State to produce the weapons and bullets for independent expert examination. The defendant relies upon the case of Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975), to support his argument that the denial of the requested discovery denied his rights to the means necessary to conduct his defense. Barnard held that "(f)undamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece ofcritical evidence whose nature is subject to varying expert opinion." 514 F.2d at 746 (emphasis added). Despite defendant's argument, the simple fact is that the evidence sought was notcritical to the defense presented. The defendant admitted shooting the victim — the issue was whether the defendant acted in self-defense, not whether or not the defendant actually did the shooting. In White v. Maggio, 556 F.2d 1352
(5th Cir. 1977), it was noted:
 "`Critical evidence', for purposes of the due process clause, is evidence that, when developed by skilled counsel and experts, could induce a reasonable doubt in the minds of enough jurors to avoid a conviction." 556 F.2d at 1357-8.
In White and Barnard the bullets were the only tangible evidence connecting the accused to the murder. See also Hobackv. Alabama, 607 F.2d 680 (5th Cir. 1979).
In response to the defendant's charge that the State willfully withheld physical evidence which the trial court had ordered produced, the record fully supports the finding of the trial judge that "both sides assumed that there had been compliance with the motion (to produce) and the order of the Court. . . ." There is nothing in the record to support a finding that the State deliberately withheld any evidence from the defendant which had been ordered to be produced.
 XI
The purpose of establishing a chain of custody in a criminal proceeding is to show a reasonable probability that the evidence has not been tampered with. Williford v. State,365 So.2d 1257 (Ala.Cr.App. 1978), cert. denied, 365 So.2d 1258
(Ala. 1979). The chain need not be proved to an absolute certainty, but only to a reasonable probability. Sexton v.State, 346 So.2d 1177 (Ala.Cr.App.), cert. denied,346 So.2d 1180 (Ala. 1977); Murrell v. State, 377 So.2d 1102
(Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
Although the Attorney General argues that the chain of custody was properly established, even if the chain were broken we fail to see how it injured the defendant in view of the defense of self-defense. Strickland v. State, 269 Ala. 573,114 So.2d 407 (1959); Vaughn v. State, 347 So.2d 582 (Ala.Cr.App. 1977); Curtis v. State, 44 Ala. App. 446, 212 So.2d 689, cert. denied, 282 Ala. 725, 212 So.2d 692 (1968); Rector v. State,11 Ala. App. 333, 66 So. 857 (1914). Where the defendant claims accident or self-defense the erroneous admission of the bullet allegedly taken from the body of the deceased is harmless error. Roberson v. State, 217 Ala. 696, 117 So. 412 (1928);Cain *Page 509 v. State, 33 Ala. App. 594, 35 So.2d 574 (1948); Jarrell v.State, 22 Ala. App. 304, 115 So. 146 (1928).
 XII
We find no error in the trial court's release of Dr. Santina as a witness after he had been thoroughly cross examined by defense counsel. The judge excused the witness after remarking: "I just don't see any reason in keeping these folks here without a specific reason."
Apparently the defendant expected to establish through Dr. Santina (1) that the deceased had not been shot with a shotgun, (2) the trajectory of the bullets which would show that the condition of the deceased was not inconsistent with the defendant's testimony, and (3) that the blood taken from the deceased was contaminated. Each of these points could have been established on cross examination. The witness did testify to some extent about the second and third factors listed above. Whether the condition of the deceased was consistent with the defendant's testimony was a question for the jury. "The trial court generally has the discretion to allow or disallow a witness to be recalled for further direct or cross examination for the purpose of asking the witness a question that might properly have been asked on his original call. McElroy, Section 440.01. From the record we find no evidence that the trial judge erred in releasing Dr. Santina as a witness and later in refusing to order his presence in court.
 XIII
Under the State's theory of the murder, Ronnie Gwin, the defendant's brother, was present at the time and scene of the killing. The record reflects that he was charged with offenses growing out of this same transaction. Upon his lawyer's advice Ronnie Gwin refused to testify and asserted his privilege against self-incrimination.
We recognize that generally a witness is not privileged from testifying unless it is apparent that his answer would tend to incriminate him. McElroy, Section 374.05.
When defense counsel called Ronnie Gwin as the defendant's first witness, Gwin's attorney made it known to the trial court that he had advised his client not to testify and to invoke his right against self-incrimination. The trial court honored the witness's asserted privilege and did not compel him to testify even though Gwin had never been asked a single question. Defense counsel excepted without giving any ground or reason and made no proffer of what he expected to prove through his witness.
Error cannot be predicated upon the trial court's refusal to compel the witness to testify unless the defendant made an offer of proof showing that the testimony he expected to elicit from the witness would not have been incriminating. CompareMurphy v. State, 108 Ala. 10, 18 So. 557 (1895); Patterson v.State, 37 Ala. App. 161, 66 So.2d 191, cert. denied, 259 Ala. 152, 66 So.2d 194 (1953). Since the witness only could have been required to answer any question which did not tend to incriminate him, but not others, the defendant should have made an offer of proof. To put the trial court in error in declining to allow a question to be answered, it must have been suggested what it was proposed to prove, and how it would be relevant and competent, unless the question in itself gave such information.Woods v. State, 18 Ala. App. 123, 90 So. 52 (1921); UnitedStates v. Wells, 525 F.2d 974 (5th Cir. 1974). An exclusion cannot be reviewed in the absence of an offer of proof. Moorev. State, 16 Ala. App. 503, 79 So. 201 (1918). Here defense counsel only made a general objection to the court's ruling and did not assign any ground. We find no preserved error in the action of the trial judge.
 XIV
The trial judge refused defendant's requested charge 15.
 "I charge you, members of the jury, if the evidence convinces you that Margaret Hunter is a woman of bad character and unworthy of belief, then you may disregard her evidence altogether." *Page 510 
Although this is a correct and proper jury charge, its refusal was not error because Ms. Hunter's testimony in all material aspects, was fully corroborated. Kennedy v. State, 291 Ala. 62,277 So.2d 878 (1973); Johnson v. State, 349 So.2d 110
(Ala.Cr.App.), cert. denied, 349 So.2d 113 (Ala. 1977).
 XV
The trial court properly refused the defendant's written requested charge on criminally negligent homicide for the reason that the evidence would not support such a charge. The "imperfect defense" doctrine which provided that a person committed the offense of criminally negligent homicide if he intentionally or recklessly caused the death of another person in the good faith but unreasonable belief that he had grounds for justification (self-defense) has been rejected by the Alabama Legislature. Comments to Alabama Code 1975, Section13A-6-4 (Amended 1979).
We have carefully and fully considered every issue presented by the defendant. Our review convinces us that he received a fair trial and that his conviction and the judgment of the Circuit Court should be affirmed.
AFFIRMED.
All the Judges concur.