Plaintiffs/Appellees Gilmer P. Phillips and Inez B. Phillips initiated this cause on March 8, 1973, against Defendants/Appellants Frank Fountain and his father, J.F. Fountain, seeking to quiet title to approximately 1,377 acres of realty situated in Etowah and St. Clair Counties. Defendants answered and counterclaimed, alleging that they held interests in the real estate through certain instruments, particularly a lease/option to purchase agreement between the Phillipses and J.F. Fountain. Plaintiffs, while admitting the existence of certain transactions between the parties, denied the existence or execution of J.F. Fountain's alleged "option," and further contended that he had lost his interest because of abandonment and nonpayment of rent.
Subsequent to a mistrial in April of 1982, a jury, on November 5, 1982, returned a verdict in favor of the Plaintiffs.[1] Defendants' post-trial motions were denied. This appeal, by J.F. Fountain only, followed.[2] We affirm.
 FACTS
When this case was before us on a prior appeal (in which the trial court's order granting Plaintiffs' motion for a summary judgment was reversed, Fountain v. Phillips, 404 So.2d 614
(Ala. 1981)), this Court's opinion set forth a basic outline of the triable factual issues. For purposes of this appeal, we need only relate those facts and procedural events essential to a consideration of the issues here presented and treated in this opinion.
During trial, J.F. Fountain sought to testify concerning an alleged handwritten "option to purchase," which, according to him, was executed by the Phillipses and given to him at the same time he received a one-year leasehold agreement. The trial court sustained objections to this evidence. Pertinent portions of that colloquy are quoted verbatim from the record, to-wit:
 "Q [L]et me again call your attention to this Lease Agreement here dated July of 1972. Let me ask you if another agreement was entered into with the Phillips' at that time?
 "A The balance of the agreement would have been something like this was on the option to purchase the same — something like Frank had had. *Page 61 
 "Q Okay. Is it your testimony that you all entered into an agreement concerning an option?
"A Yes, we did.
 "Q Okay. And what were the terms of that option at least as far as if you can compare it to anything?
 "Mr. SUTTLE: Your Honor, if it is in writing we would object to any oral statement or testimony concerning the terms of the option agreement. If it is in writing then the writing would control.
 "THE COURT: It would unless there was some controversy about it or if the provisions were unclear in some respect.
 "Q Well, if I could just go forward just a moment. This agreement that we are talking about, do you have the original of that, this July Option Agreement?
 "A I don't have the original of it. I happen to have the original of this.
 "Q Well, who, if anyone, had the original of this July Option that you are talking about?
 "A We drew it up on their table. It was drawn up on their table at the same time this was.
"Q Did you ever take possession of it?
"A I don't think I did.
 "Q Okay. Who had possession of it the last time that you saw that particular document?
"A It was still in their office.
 "Q Okay. Have you had occasion since that time to ask them to provide it to you?
"A Yes, because I didn't get it when I got this.
"Q And what was their response?
 "A Well, `we couldn't find it right then' or `we would get one' or `draw up another one' and they did.
 "MR. ROBERTS: Your Honor, I think that satisfies the predicate as far as the best evidence objection.
 "THE COURT: Where did this one come from? I'm still not clear.
 "MR. ROBERTS: This is the lease right here that we have been talking about.
 "THE COURT: You are talking about an option that we don't have before us?
"MR. ROBERTS: Yes, sir, Judge.
 "MR. SUTTLE: Is he talking about some other option other than what has been offered in evidence, some other written document? Is that what he is talking about?
"MR. ROBERTS: Yes, sir.
 "THE COURT: But it is not part of what has been offered?
 "MR. ROBERTS: Right. It is one that we have never had possession of, your Honor.
 "MR. HAWKINS: You are not talking about Defendant's Exhibit 2?
"MR. ROBERTS: No, sir.
 "THE COURT: Well, now, I don't know if he can testify about some lost Option Agreement.
 "MR. SUTTLE: That is what it amounts to, if the court please.
"MR. ROBERTS: We need to take it up, I believe.
"MR. SUTTLE: By oral statements —
"THE COURT: — Well, you all approach the bench.
 "(Whereupon the following side bar discussion took place.)
 "MR. HEDGSPETH: There was testimony at the last trial offered to the effect —
 "MR. ROBERTS: — I assume their objection is on the best evidence rule, and the number one exception to that rule is where the document was last in the possession of the adverse party and not available to the party testifying about it.
 "THE COURT: Well, is there any evidence that the adverse party ever had possession other than his testimony?
 "MR. ROBERTS: That is all that is required under the Best Evidence Rule, *Page 62 
your Honor. This was gone into before.
"MR. SUTTLE: We are dealing with land, Judge.
 "THE COURT: It seems to me that it is kind of self serving. You could always say the other side had them.
 "MR. ROBERTS: That is the law. I can find it here.
 "THE COURT: I am going to sustain. If you can find me a case that says that I will let you go into it."
During summation to the jury Plaintiffs' counsel made the following argument, in part (quoting from the record):
 "But the Fountains were not satisfied with filing these documents in the Record Room where you record mortgages and deeds and things of that kind. They were not satisfied after the probate of the Phillips Estate. What did they do? They filed against the Estate of Gilmer P. Phillips in the Probate Court of Etowah County a claim of J.F. Fountain and the claim of Frank Fountain. There is attached to these claims a copy of these documents I referred to which was the April 23, 1971 Lease Option with Frank and attached a copy of the 1969 Lease Option with Frank and the amendment. But then they attached to that claim the same document, January, 1972 — I mean July, 1972. That is the one year Lease which we admit is legal and was entered into but which was waived and abandoned by Mr. Joe on January 29, 1973. They attached to that claim a copy of this document which is the initialed document, which we deny ever existed. They attached to that claim a copy of these pages which they claim to be an option. They filed that against the estate of Gilmer Phillips and they claimed that the deceased owed the claimant the total sum of Five Hundred Thousand Dollars plus the interest thereon and the additional sum of Five Thousand — what did I say? Did I say Five? — I mean Five Hundred Thousand plus interest and the additional sum of Five Hundred Thousand Dollars in punitive damages. So Mr. Joe over here filed a One Million Dollar claim against the Phillips Estate which is still owing or unsatisfied, which the court will charge you constitutes a blanket lien against all property, real estate, personal property and what not owned by Gilmer P. Phillips at the time of his death. This is a part of what we are trying to have removed from the records of Etowah County. This is in the Probate Court. Frank Fountain filed a similar claim — identical — claiming Five Hundred Thousand Dollars damages and an additional Five Hundred Thousand Dollars punitive damages. So the Fountains have filed over a total of Two Million Dollars of claims against the Estate of Gilmer Phillips in the Probate Court of Etowah County. Here five years after the death of Gilmer Phillips these claims cloud everything involved in his estate. Ladies and Gentlemen, we are dealing with serious business here. The same thing could happen to you.
 "MR. HEDGSPETH: Judge, I am going to object to that. That is totally improper and Mr. Suttle knows that, trying to draw personal references to the jury. We object to that and ask the court to instruct the jury to ignore that.
 "MR. SUTTLE: I have the right to argue what the potentialities are.
 "THE COURT: All right. Go ahead. (Mr. Suttle continuing with closing argument:)
 "What I started to say is that the same thing could happen to you or to your family or your estate if people are allowed to come in and file documents like this which we say are forgeries, spurious, illegal and have no legal validity and tie up your estate for years and years and years and require your people to litigate. This suit was filed in 1973 in an effort by [Plaintiffs' first lawyer, now deceased] to clear this title. We are still litigating in 1982 nine years later."
 ISSUES
Of the several issues presented, we consider the two issues arising out of the procedural *Page 63 
context set out under "FACTS" above deserving of our treatment:
Appellant states those issues thusly:
 "[1] That the trial court erred in sustaining the Phillips' Best Evidence Rule objection to Joe's testimony concerning the handwritten July, 1972 option.
 "[2] That error appears in the overruling of objections to `Golden Rule' argument made by the Phillips' attorney during closing argument."
Fountain contends that the trial court erred in failing to accept his testimony concerning the alleged "missing" option agreement of July 1972. We disagree.
J.F. Fountain testified that the original "missing option" could not be found, and, as a result, Plaintiffs drew up a subsequent "option." While the "best evidence rule" objection may have been inappropriate, the trial judge correctly excluded the evidence under the general objection of relevancy. To be admissible, all evidence must first have some tendency to shed light on the inquiry in issue. Stated simply, it must be relevant. Taylor v. Mason, 390 So.2d 1046 (Ala. 1980); Ward v.State, 52 Ala. App. 392, 293 So.2d 307 (1974).
It is not the "missing option" which Fountain seeks to enforce, but a subsequent one alleged by him to have been agreed upon by the parties. This is the agreement which the jury, after hearing conflicting testimony as to its alleged existence, found contrary to Fountain's assertions.
J.F. Fountain also testified that he never took possession of the alleged "missing option." In 17 C.J.S. Contracts, § 64 (1963), we find the following:
 "Generally delivery is an essential element of the execution of a contract in writing, and such a contract is not binding unless it is delivered."
It is undisputed that the "missing option" was never delivered by the Phillipses to J.F. Fountain, and, as such, could not operate so as to bind the parties contractually. In other words, the very evidence offered to meet the requisite predicate for proof of a lost document failed the admissibility test for lack of relevancy and nondelivery of the instrument in question.
Fountain's next point of contention is that the trial court erred in not excluding certain remarks by Appellees' counsel during his closing arguments to the jury, when he stated:
 "Here five years after the death of Gilmer Phillips these claims cloud everything involved in his estate. Ladies and gentlemen, we are dealing with serious business here. The same thing could happen to you."
(Emphasis added.)
Generally, an appeal to the jury's sympathy during closing argument by inviting the jurors, individually, to stand in the shoes of the litigant is considered improper. Allison v.Acton-Etheridge Coal Co., 289 Ala. 443, 268 So.2d 725 (1972). Case law demonstrates, however, that the courts have not been overly restrictive in their application of this rule. An argument similar to the one here challenged was addressed inBritish General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763 (1957):
 "Mr. Jones: Now, the British General Insurance Company says oh, no, we can't insure that property. We can't pay you for that. You can look at this Agency Agreement, and you can see we can't insure that property. You can see we can't go any farther than Jefferson County, that is as far as we can go. We can't insure it anywhere else, so you are just out, big boy, we are sorry. How would you like to have that happen to you?" (Emphasis added.)
Commenting on these remarks, the Court said:
 We do not think these remarks were so improper and prejudicial as to justify a reversal of the trial court. It is generally held that it is improper to ask the jury to divest themselves of their impartial position and place themselves in the shoes of the plaintiff. Kahn v. Green, Tex.Civ.App., 234 S.W.2d 131; F.W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, *Page 64 
98 A.L.R. 681; 53 Am.Jur., Trials, § 496, p. 401 (authorities cited by appellant).
 "However, we have said that we `will not too narrowly criticize arguments of counsel in the matter of inferences drawn for illustration or figures of speech adopted in pressing a point.' Louisville Nashville R. Co. v. Tucker, 262 Ala. 570, 578, 80 So.2d 288, 295; Jones v. Colvard, 215 Ala. 216, 218, 109 So. 877. Nor should we encroach on the trial court's discretion in the matter of argument of counsel. `Much must be left in such matters to the enlightened judgment of the trial court, with presumptions in favor of the ruling." Smith v. Reed, 252 Ala. 107, 112, 39 So.2d 653, 657; Birmingham Electric Co. v. Mann, 226 Ala. 379, 381, 147 So. 165, 166.
 "Regardless of the propriety or impropriety of the remarks of counsel in the case at bar, we do not feel there has been a showing of injury to appellant requiring a reversal. As stated in Birmingham Electric Co. v. Perkins, 249 Ala. 426, 430, 31 So.2d 640, 642:
 "`* * * The trial court was present and was an eyewitness to all of the proceedings and in overruling the defendant's motions in effect found that the remarks were not prejudicial to the defendant. Therefore the action of the trial court in denying the motions for mistrial and in overruling the motions for new trials will not be disturbed by this court unless it affirmatively appears from the entire record that the statements involved were probably prejudicial to the defendant, either as to result or the amount of damages assessed. * * *'"
See, also, Cofield v. State, 41 Ala. App. 469, 136 So.2d 897
(1961).
Fountain's reliance upon Estis Trucking Co., Inc. v. Hammond,387 So.2d 768 (Ala. 1980), is misplaced. Indeed, the EstisTrucking Company Court, although reaching a different result, commented upon British General Insurance, supra, approvingly and distinguished the jury arguments in the two cases thusly:
 "[I]n British General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763 (1957), this Court held that there had not been a showing of injury requiring reversal when plaintiff's counsel, in closing argument, asked the jury, `How would you like to have that happen to you?' In British General the main issue was whether plaintiff was insured, plaintiff's counsel contending that plaintiff was led by the insurance agent to believe that he was covered, and asking, in argument, for the jurors to determine whether they would have believed they were covered if the same thing had happened to them.
 "However, the argument in the instant case goes beyond the argument alleged to be improper in Hayles [v. Jeter, 279 Ala. 283, 184 So.2d 363 (1966)] and British General. In the instant case, there was not merely a bare invitation for the jurors to put themselves in the place of the plaintiff. There was more. The argument here presented was an appeal to the jurors' feelings and passion, tantamount to requesting the jurors to hold in favor of the plaintiffs based upon the jurors' sympathy for Mrs. Hammond. A jury verdict reached in favor of any party on the basis of bias, prejudice or sympathy must be set aside."
As in British General Insurance Co., when the objected to portion of the argument in the instant case is viewed in its full context, we cannot say that "these remarks were so improper and prejudicial as to justify a reversal of the trial court." The reluctance of the courts to find prejudicial error in these situations finds its motivation in the countervailing rule "that great latitude should be given counsel in the content and scope of their closing arguments." R.C. BottlingCo. v. Sorrells, 290 Ala. 187, 275 So.2d 131 (1973).
After careful consideration of these and each of the other issues presented, we find no reversible error; therefore, the judgment below is due to be, and hereby is, affirmed; and this 10-year old case (submitted *Page 65 
in this Court August 26, 1983) is brought to an end.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Gilmer P. Phillips died in 1977 during the course of these proceedings, and Inez B. Phillips, as Executrix, was substituted as a party.
[2] Although both defendants executed the notice of appeal, no adverse ruling pertaining to Frank Fountain is presented for review.